557 S.E.2d 340

Melissa C. JUDY, Plaintiff
Below, Appellant,

v.

GRANT COUNTY HEALTH DEPART-
MENT; Grant Memorial Hospital; John
L. Hahn, M.D.; and Tamara Kessel,
C.N.M., Defendants Below, Appellees.

No. 29637.

Supreme Court of Appeals of
West Virginia.

Submitted Oct. 23, 2001.

Decided Nov. 30, 2001.

D. Michael Burke, Esq., Burke, Schultz and Harman, Martinsburg, West Virginia, and Barry J. Nace, Esq., Paulson & Nace, Washington, D.C., Attorneys for Appellant.

Susan S. Brewer, Esq., Jacquelyn A. Jordan, Esq., Steptoe & Johnson, Morgantown, West Virginia, and Ancil G. Ramey, Esq., Steptoe & Johnson, Charleston, West Virginia, Attorneys for Appellees.

PER CURIAM:

This case is before this Court upon appeal of a final order of the Circuit Court of Grant County entered on October 2, 2000. In that order, the circuit court denied a motion filed by the appellant and plaintiff below, Melissa C. Judy, to alter the judgment of the jury finding her 49% negligent in this medical malpractice action filed against the appellees and defendants below, the Grant County Health Department, Grant Memorial Hospital, John L. Hahn, M.D., and Tamara Kessel, C.N.M., alleging failure to timely diagnose and treat breast cancer. In this appeal, the appellant claims that the circuit court erred by permitting a comparative negligence instruction because no expert testimony established that any purported negligence on her part proximately caused or contributed to her injury.

This Court has before it the petition for appeal, the entire record, and the briefs and argument of counsel. For the reasons set forth below, the final order of the circuit court is reversed, and this case is remanded to the circuit court with directions to enter judgment in favor of the appellant in the amount of the full jury verdict.

I.

On January 6, 1995, the appellant went to the Grant County Health Department for an annual check-up. The appellant was examined by Tamara Kessel, a certified nurse midwife, who was under the supervision of John L. Hahn, M.D. Both Ms. Kessel and Dr. Hahn are employees of the Grant County Health Department and Grant Memorial Hospital. According to the appellant, she told Ms. Kessel that she had detected a lump in her left breast. The appellant claims that Ms. Kessel examined her breast and told her that it was fibrocystic and that there was "nothing to worry about."

The appellant returned to the Grant County Health Department in September 1995, again complaining about the lump in her breast. This time, the appellant was diagnosed with breast cancer. The cancer had spread to two lymph nodes and as a result, the appellant underwent a mastectomy of the left breast followed by six months of chemotherapy.

On September 5, 1997, the appellant filed this medical malpractice action against the appellees alleging that they had failed to promptly diagnose and treat her condition, thereby causing her damages, including a loss of chance of survival. The case proceeded to trial on May 8, 2000.

At trial, Ms. Kessel admitted that she did not recall examining the appellant on January 6, 1995. However, she testified that the appellant's chart did not indicate that the appellant reported finding a lump in her breast. Ms. Kessel further testified that she did find that the appellant's breast was fibrocystic. Ms. Kessel stated that she had been specifically trained to detect the difference between an abnormal lump and a cyst.

Dr. Joel Palmer testified on behalf of the appellant with respect to the standard of care. Dr. Palmer testified that the lump in the appellant's breast would have been one to two centimeters in size in January 1995, and that Ms. Kessel should have found the lump even if the appellant did not tell her about it. Dr. Palmer opined that it was a violation of the standard of care for Ms. Kessel to not have discovered the lump and referred the appellant to another physician for further treatment in January 1995. By contrast, Dr. Leonard Rosen, testifying on behalf of the appellees, concluded that there had not been a violation of the standard of care. However, Dr. Rosen agreed that a lump one centimeter in size should have been found by a nurse midwife.

With respect to causation, the appellant's expert, Dr. Gary Witman, testified that in his opinion the lump was present in January 1995, and had it been found at that time, the appellant would not have needed a mastectomy, nor chemotherapy. Dr. Witman further testified that in January 1995, it was much more likely than not that the appellant's cancer was limited to the tumor in her breast

and had not spread to her lymphatic system. Dr. Witman added that had the cancer been detected before it spread to the appellant's lymphatic system, treatment could have consisted of a lumpectomy with radiation therapy. On the other hand, the appellees' expert, Dr. Marc Lipman, testified that even if the appellant's cancer had been diagnosed in January 1995, it would have made no difference in her treatment because he believed there already had been metastasis to the lymph nodes.

Toward the end of the trial, the appellees requested that the circuit court give the jury an instruction on comparative negligence. The appellant objected. However, the court found that there was sufficient evidence in the record to support such an instruction. Thereafter, the jury returned a verdict finding Ms. Kessel to be 51% at fault and the appellant to be 49% at fault.[1] The jury found damages totaling $67,100.00. Subsequently, the circuit court denied the appellant's motion filed pursuant to Rule 59 of the Rules of Civil Procedure to alter the judgment to eliminate the finding of comparative negligence. This appeal followed.

### II.

We begin our analysis of this case by setting forth our standard of review. In this case, the appellant filed a motion to alter the jury's verdict pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure. Rule 59(e) permits a party to make "[a] motion to alter or amend the judgment . . . not later than 10 days after entry of the judgment." In *Wickland v. American Travellers Life Ins. Co.*, 204 W.Va. 430, 435, 513 S.E.2d 657, 662 (1998), we observed that,

> when this Court has been asked to decide an appeal arising from the denial of a motion to alter or amend a judgment, we typically have looked beyond the motion to the nature of the underlying judgment from which the motion has been made, and from which the appeal ultimately is taken, to find the appropriate standard of review.

(Citations omitted.) Thus, in Syllabus Point 1 of *Wickland*, we held that:

The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed.

In this case, the basis of the appellant's motion to alter the judgment was the comparative negligence instruction given to the jury. In Syllabus Point 1 of *Walters v. Fruth Pharmacy, Inc.*, 196 W.Va. 364, 472 S.E.2d 810 (1996), this Court held that:

> "The formulation of jury instructions is within the broad discretion of a circuit court, and a circuit court's giving of an instruction is reviewed under an abuse of discretion standard. A verdict should not be disturbed based on the formulation of the language of the jury instructions so long as the instructions given as a whole are accurate and fair to both parties." Syllabus Point 6, *Tennant v. Marion Health Care Foundation, Inc.*, 194 W.Va. 97, 459 S.E.2d 374 (1995).

We have also held that:

> "It will be presumed that a trial court acted correctly in giving or in refusing to give instructions to the jury, unless it appears from the record in the case that the instructions were prejudicially erroneous or that the instructions refused were correct and should have been given." Syllabus Point 1, *State v. Turner*, 137 W.Va. 122, 70 S.E.2d 249 (1952).

Syllabus Point 1, *Moran v. Atha Trucking, Inc.*, 208 W.Va. 379, 540 S.E.2d 903 (1997). In addition, we have also observed that:

> "If there be evidence tending in some appreciable degree to support the theory of proposed instructions, it is not error to give such instructions to the jury, though the evidence be slight, or even insufficient to support a verdict based entirely on such theory." Syllabus Point 4, *Snedeker v. Rulong*, 69 W.Va. 223, 71 S.E. 180 (1911).

Syllabus Point 2, *Moran*. With these standards in mind, we now consider the parties' arguments.

---

1. Grant Memorial Hospital was dismissed as a defendant prior to the jury entering its verdict.

As noted above, the appellant contends that the appellees did not offer any evidence that any negligence on her part was even a possible cause of her injuries, and thus, the trial court erred by giving the jury a comparative negligence instruction. The record shows that the trial court instructed the jury as follows:

The Court instructs the jury that this case must be determined on the basis of what is known as comparative fault or the comparative negligence of the parties. Therefore, it will be necessary for you to determine from the evidence the percentage of fault, if any, attributable to each of the parties.

To help you in deciding the percentage of fault of the parties, if any, you will be provided with a special verdict form consisting of several questions. Your duty will be discharged by answering such of these questions as under the evidence, and the Court's instructions, it becomes necessary for you to answer in order to arrive at a completed verdict.

The Court has already instructed you as to the meaning of the term "standard of care" as it pertains to health care providers. However, you must also decide whether Melissa Judy was negligent in failing to act reasonably. For non-health care professionals, negligence is the lack of ordinary and reasonable care. It is the failure of a person to do something that an ordinary person would do, or the act of a person in doing something that an ordinary person would not do, measured by all the circumstances then existing. A party is at fault when he or she is negligent and his or her negligence causes or contributes to the event which brought about the injury and damages for which a claim is made.

The term "comparative," when used in reference to fault or negligence, simply means that the conduct of one or more of the parties is being considered, and the extent to which any of that conduct caused or contributed to the injury is compared as between the parties. In other words, it calls for comparison of the negligence or fault of more than one party in bringing about the injury or damages for which a claim is made.

In this case, you will have to determine whether the defendants were negligent and, if you determine that the defendants were negligent, whether their negligence caused the plaintiff's alleged diminished chance of survival. However, if from all the evidence you believe that Melissa Judy had a duty to inform health care providers and/or follow-up regarding the lump in her breast, and that she did not fulfill this duty, then you may assign to her that portion of negligence that you believe is warranted by all the evidence.

In Syllabus Point 3 of *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979), this Court adopted the principle of comparative negligence and held that "[a] party is not barred from recovering damages in a tort action so long as his negligence or fault does not equal or exceed the combined negligence or fault of the other parties involved in the accident." However, we also stated that "before any party is entitled to recover, it must be shown that the negligence of the defendant was the proximate cause of the accident and subsequent injuries. The same is true of contributory fault or negligence. Before it can be counted against a plaintiff, it must be found to be the proximate cause of his injuries." *Bradley,* 163 W.Va. at 342–343, 256 S.E.2d at 885.

In this case, the appellees maintained that the appellant was comparatively negligent by either failing to report finding a lump in her breast to Ms. Kessel at her appointment in January 1995 or by not returning for another examination prior to September 1995. In order to determine whether the comparative negligence instruction was appropriate, we first consider the evidence presented with regard to the appellant's examination by Ms. Kessel on January 6, 1995.

As discussed above, the appellant testified that she reported finding a lump in her breast to Ms. Kessel on January 6, 1995. Our examination of the record reveals that there was no evidence directly disputing the appellant's testimony. Ms. Kessel testified that she did not remember examining the appellant on January 6, 1995, and she needed

to rely on the appellant's chart to recall the examination. It is undisputed that Ms. Kessel found the appellant's breast to be fibrocystic and reported this finding to her. Thereafter, Ms. Kessel told the appellant that she did not need to return until next year for her annual examination. Contrary to the appellees' assertions, the mere absence of a notation in the appellant's chart indicating that she had reported finding a lump in her breast does create a triable issue, and thus warrant a comparative negligence instruction.

The facts in the case at bar are strikingly similar to those in *Gravitt v. Ward,* 258 Va. 330, 518 S.E.2d 631 (1999). In *Gravitt,* the plaintiff was also diagnosed with breast cancer a few months after she was examined by her doctor and told that a lump in her breast was a cyst. As in this case, the plaintiff's chart did not reflect that she had reported finding a lump although it did indicate that the doctor had found "fibrocystic changes." In finding that a contributory negligence[2] instruction was not appropriate, the Supreme Court of Virginia stated:

> "The physician-patient relationship differs substantially from that of the ordinary plaintiff and defendant." [*Lawrence v. Wirth*] 226 Va. [408,] 411, 309 S.E.2d [315,] 317 [ (1983) ]. This is so because of the great disparity in medical knowledge between "doctor and patient." *Id.* Despite that disparity, it is common knowledge that the presence of a lump in a woman's breast presents the possibility of the presence of a malignant tumor.... Thus, under those circumstances, the woman patient seeks to obtain, through a breast examination, the benefit of the doctor's medical knowledge to determine if a malignant tumor is in fact present in her breast, and if so, to obtain appropriate treatment.

*Gravitt,* 258 Va. at 336, 518 S.E.2d at 634.

Although the plaintiff in *Gravitt* testified that she initially went to her doctor because she found a lump in her breast, we do not believe that distinction from the case at bar makes a difference. As discussed above, with the exception of the absence of a nota-

tion in the appellant's chart indicating that she had found a lump in her breast, there is no evidence that the appellant failed to make such a report. "In this context, it is inconsistent with common knowledge and human experience that such a patient, concerned for her own safety, would fail to inform her doctor with the fact that [she discovered] a lump in her breast[.]" *Gravitt,* 258 Va. at 336, 518 S.E.2d at 634–35. Thus, we find that the facts surrounding the appellant's January 6, 1995 examination did not support a comparative negligence instruction.

■ We now consider the assertion that the appellant was comparatively negligent in failing to return for a follow-up visit prior to September 1995. Our review of the evidence reveals that there was no evidence presented, either by expert testimony or otherwise, indicating that the appellant was negligent by not returning for an examination sooner. In fact, the evidence presented showed that the appellant's delay in returning made no difference in her prognosis. In this regard, the appellees' causation expert, Dr. Lipman, testified as follows:

> [I]t's my very strong opinion that had her breast cancer been diagnosed approximately nine months previously in January, rather than in September, the following September, in her particular case, that change in the time, that delay, would have made, in effect, no difference at all.

In response to further questioning, Dr. Lipman testified that, "In this particular woman's case, I believe to a reasonable degree of medical probability, that this delay in diagnosis specifically did not make a difference[.]" Finally, Dr. Lipman stated, "I believe that, in fact, in this particular case, that change between January and September did not substantially alter her prognosis." Given this evidence, we find no basis for a comparative negligence instruction.

■ In Syllabus Point 2 of *McCoy v. Cohen,* 149 W.Va. 197, 140 S.E.2d 427 (1965) this Court explained that: "A fundamental legal principle is that negligence to be actionable must be the proximate cause of the injury complained of and must be such as

---

2. While the *Gravitt* case was decided under's Virginia's contributory negligence laws, we find the analysis of the Supreme Court of Virginia regarding the physician-patient relationship applicable to the facts of this case.

might have been reasonably expected to produce an injury." This Court further held in Syllabus Point 3 of *McCoy* that: "Proximate cause is a vital and an essential element of actionable negligence and must be proved to warrant a recovery in an action based on negligence." Finally, this Court has held that: " 'The proximate cause of an injury is the last negligent act contributing to the injury and without which the injury would not have occurred.' Syllabus Point 5, *Hartley v. Crede*, 140 W.Va. 133, 82 S.E.2d 672 (1954), *overruled on other grounds, State v. Kopa*, 173 W.Va. 43, 311 S.E.2d 412 (1983)." Syllabus Point 5, *Sergent v. City of Charleston*, 209 W.Va. 437, 549 S.E.2d 311 (2001). Given the complete lack of any evidence in this case indicating that the appellant's failure to return for another examination before September 1995 was the proximate cause of her injuries, we again find no basis for a comparative negligence instruction.

Having found that the circuit court erred by giving a comparative negligence instruction in this case, we further find that the appellant is entitled to the full amount of the jury verdict. Accordingly, the final order of the Circuit Court of Grant County is reversed, and this case is remanded to the circuit court with directions to enter judgment in favor of the appellant in the amount of the full jury verdict.

Reversed and remanded with directions.