664 S.E.2d 175

**Vanessa Jean PRUITT, Administratrix of the Estate of Charlie E. Pruitt, Deceased; Vanessa Jean Pruitt, Mother and Legal Guardian of Angel M. Pruitt, an infant under the Age of 18 Years; Vanessa Jean Pruitt, individually; and Timothy B. Pruitt, Plaintiffs Below, Appellants**

**v.**

**WEST VIRGINIA DEPARTMENT OF PUBLIC SAFETY, C.F. Kane, John Doe I, John Doe II, and John Doe III, Defendants Below, Appellees.**

No. 33526.

Supreme Court of Appeals of West Virginia.

Submitted March 12, 2008.

Decided June 3, 2008.

H. Truman Chafin, Esq., Letitia Neese Chafin, Esq., The H. Truman Chafin Law Firm, Williamson, John C. Yoder, Esq, Harpers Ferry, for Appellants.

Darrell V. McGraw, Jr., Attorney General, Steven R. Compton, Esq., Senior Assistant Attorney General, Charleston, for Appellee.

MAYNARD, Chief Justice:

The plaintiffs below and appellants herein appeal the November 29, 2006, order of the Circuit Court of Kanawha County to the extent that the order granted summary judgment in favor of defendant below and appellee herein, the West Virginia Department of Public Safety. The appellants had filed a suit alleging various federal and state claims against the Department and a state trooper employed by the Department arising from the trooper's fatal shooting of the appellants' family member. For the reasons stated below, we affirm in part, reverse in part, and remand.

## I.

### FACTS

On December 23, 2001, State Trooper C.F. Kane, a defendant below, responded to a 911 call advising of a domestic disturbance at the residence of Charles Pruitt in McDowell County.[1] After arriving at the Pruitt residence, Trooper Kane fatally shot Charles Pruitt while Mr. Pruitt was located in the living room of his house. At the time of the shooting, the decedent's wife, Vanessa Pruitt, his son, Timothy Pruitt, and his four-year-old daughter, Angel Pruitt, were in the home. The decedent's daughter, Tasha Pruitt, who made the 911 call, was not in the house at the time.

There are many disputed facts with regard to the circumstances surrounding the killing of Charles Pruitt. It is undisputed, however, that Trooper Kane fired a total of sixteen shots and hit the decedent fourteen times, and that the decedent never fired a single shot. It is also undisputed that Trooper Kane fired 12 shots at the decedent, reloaded his gun clip, and fired an additional four shots at the decedent. The appellants presented evidence below indicating that some of the shots hit the decedent in the right flank, the right buttock, and the posterior left upper leg. Finally, although the issue is disputed, there is evidence from which a person could conclude that the decedent was not holding a firearm when he was shot.

---

1. During oral argument before this Court, counsel for both the appellants and the Department agreed that the 911 call, made by Charles Pruitt's daughter Tasha Pruitt, was false.

On January 22, 2003, the appellants, Vanessa Pruitt[2] and Timothy Pruitt, filed a complaint against the West Virginia Department of Public Safety[3] and Trooper Kane in which they brought a federal action pursuant to 42 U.S.C. § 1983[4] as well as numerous state constitutional and tort law claims. Some of these claims arise not only from the killing of Charles Pruitt but also from Trooper Kane's alleged mistreatment of Vanessa Pruitt and Timothy Pruitt in the immediate aftermath of the killing. With regard to the state claims against the Department of Public Safety, the appellants assert liability based on the Department's alleged negligent and intentional failure to instruct and control Trooper Kane, and vicarious liability.

By motion dated January 5, 2006, the Department of Public Safety moved for summary judgment arguing that there is no evidence that the Department violated the appellants' statutory and constitutional rights by failing to supervise, train, instruct, and control Trooper Kane nor that it allowed a pattern and practice of police brutality, excessive police force, and/or constitutional violations to develop and exist as a matter of Department custom and policy that proximately caused the alleged actions and injuries to the appellants. The Department also contended that it is not a person under 42 U.S.C. § 1983, and as such is not amenable to suit. Trooper Kane also moved for summary judgment.

After a hearing on the motions, the circuit court entered an order on November 29, 2006, in which it granted summary judgment in favor of the Department of Public Safety on all claims asserted by the appellants and denied Trooper Kane's motion for summary judgment. The appellants now appeal the granting of summary judgment on behalf of the Department.

**2.** Vanessa Pruitt brought suit as administratrix of the estate of Charles Pruitt, as mother and legal guardian of Angel Pruitt and individually.

**3.** The Department of Public Safety is now known as the West Virginia State Police. *See* W.Va. Code § 15–2–2 (2006).

**4.** 42 U.S.C. § 1983 provides in relevant part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of

## II.

### STANDARD OF REVIEW

As we have often stated, our review of the circuit court's summary judgment order is *de novo*. Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Also, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Co. v. Federal Co.*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

In addition, we note that the circuit court's summary judgment order contains no findings of fact and is therefore insufficient as a matter of law. This Court has held that

> While our standard of review for summary judgment remains *de novo*, a circuit court's order granting partial summary judgment must set out factual findings sufficient to permit meaningful appellate review. Findings of fact, by necessity, include those facts which the circuit court finds relevant, determinative of the issues and undisputed.

Syllabus Point 4, *Toth v. Board of Parks and Recreation*, 215 W.Va. 51, 593 S.E.2d 576 (2003). We have explained this holding as follows:

> . . . an order granting summary judgment cannot merely recite and rest exclusively upon a conclusion that, "No genuine issue of material fact is in dispute and therefore summary judgment is granted." For meaningful appellate review, more must be included in an order granting summary judgment. This Court's function as a reviewing court is to determine whether the stated reasons for the granting of summary judgment by the lower court are

any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

supported by the record In other words, the circuit court's order must provide clear notice to all parties and the reviewing court as to the rationale applied in granting or denying summary judgment. *Fayette County Nat. Bank v. Lilly,* 199 W.Va. 349, 353–54, 484 S.E.2d 232, 236–37 (1997). Nevertheless, this Court is able to resolve the issues before us without a detailed order and thus have no reason to remand for the circuit court to provide findings of fact and conclusions of law. *See Toth, supra.*

## III.

## DISCUSSION

### A. § 1983 Action

The first issue before us is whether the circuit court erred in granting summary judgment to the Department of Public Safety on the appellants' § 1983 claims.[5] It is undisputed that the Department of Public Safety is an instrumentality of the state. Further, the law is clear on the question of whether a state is a "person" under 42 U.S.C. § 1983.[6]

We believe that the United States Supreme Court case of *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), is dispositive of this issue. In Will, the appellant, Ray Will, filed suit against the Michigan Department of State Police and the Director of State Police alleging various violations of the United States and Michigan Constitutions as grounds for a claim under § 1983. Mr. Will asserted that he had been improperly denied a promotion to a position within the Department of State Police because of his brother's student activism. The Michigan Supreme Court determined that Mr. Will could not sue the Department of State Police under § 1983 because the state is not a person under that statute.

The U.S. Supreme Court framed the issue as "whether a State, or an official of the State while acting in his or her official capacity, is a 'person' within the meaning of ... 42 U.S.C. § 1983[,]" 491 U.S. at 60, 109 S.Ct. 2304, and concluded that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." 491 U.S. at 71, 109 S.Ct. 2304. As reasons for its decision, the Court indicated first that in common usage, the term "person" does not include the sovereign, and statutes employing the word "person" are ordinarily construed to exclude it. This approach, explained the Court, is particularly applicable where it is claimed that Congress has subjected the

---

**5.** As its rationale for dismissing the appellant's § 1983 claims, the circuit court stated:

Specifically, the Court finds that the West Virginia Department of Public Safety is not a "person," as that term is defined for purposes of an action, pursuant to Section 1983. The Court finds the argument that it is actually the Department's insurer that is the real party, to be unpersuasive. Accepting that argument would essentially obliterate the definition of the term "person" as used in the statute for most all cases. Additionally even if the West Virginia Department of Public Safety was a "person" as defined for purposes of an action pursuant to Section 1983, the plaintiffs have failed to identify an official policy or custom of the West Virginia Department of Public Safety that caused a deprivation of plaintiffs' or plaintiffs' decedent's constitutional rights, nor has there been evidence offered which creates a genuine issue of material fact that the West Virginia Department of Public Safety was deliberately indifferent to any rights of the plaintiffs or plaintiffs' decedent, given the elements outlined in *Shaw v. Stroud.*

The case of *Shaw v. Stroud,* 13 F.3d 791 (4th Cir.1994), involved a § 1983 action brought by the wife and minor children of an arrestee who was shot and killed by a state trooper. In that case, the United States Court of Appeals for the Fourth Circuit explained;

We have set forth three elements necessary to establish supervisory liability under § 1983: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. (Citations omitted.).

13 F.3d at 799.

**6.** The Department of Public Safety, now known as the West Virginia State Police, is an instrumentality of the state pursuant to W.Va.Code § 15–2–1, *et seq.*

states to liability to which they had not been subject before. Second, the Court found that the language of § 1983 falls far short of satisfying the ordinary rule of statutory construction that if Congress intends to alter the usual constitutional balance between the states and the federal government, it must make its intention to do so unmistakably clear in the language of the statute. Third, the Court indicated that its decision is reinforced by Congress's purpose in enacting § 1983 which is to allow civil rights claimants to avoid state courts. However, § 1983 does not provide a federal forum for litigants who seek a remedy against a state due to the fact that the 11th Amendment bars such suits. Therefore, Congress could not have intended § 1983 to apply to the states. Fourth, the Court's previous holdings have recognized that in enacting § 1983, Congress did not intend to override well-established immunities or defenses under the common law. Finally, the Court found nothing substantial in the legislative history of § 1983 that led it to believe that Congress intended the word "person" to include the states.

█ The appellants assert that it is the state's insurer and not the state that is being sued up to the maximum limits of the state's liability insurance coverage so that *Will* does not apply. We reject this argument. While *Pittsburgh Elevator Co. v. W.Va. Bd. of Regents*, 172 W.Va. 743, 310 S.E.2d 675 (1983), holds that the state's constitutional immunity does not bar a suit against the state up to the limits of the state's insurance coverage, that case addresses only the state's sovereign immunity and not federal statutory law and the federal constitutional implications arising therefrom.

█ Therefore, we now hold that, pursuant to *Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), neither the State of West Virginia nor its officials acting in their official capacities are "persons" under 42 U.S.C. § 1983. Applying this holding to the facts before us, we find that the Department of Public Safety, as an agency of the state is not a "person" under § 1983. As a result, an action under that statute cannot be brought against the Department.[7] Accordingly, we affirm the ruling of the circuit court to the extent that it granted summary judgment to the Department of Public Safety on the appellants' § 1983 action.

### B. State Law Claims

█ The second issue before us in the instant case is whether the circuit court properly granted summary judgment to the Department on the appellants' state constitutional and common law tort claims.

In dismissing the appellants' state law claim alleging that the Department failed to train and/or supervise Trooper Kane, the circuit court stated:

Further, given the totality of the deposition testimony, the plaintiffs have failed to establish a genuine issue of material fact such that a reasonable jury could find in her favor. On the issue of failure to train and/or supervise against the West Virginia Department of Public Safety, moreover, the Doctrines of Judicial and Equitable Estoppel are not applicable to the facts of this case where a Prosecuting Attorney made certain statements before the Grand Jury.

The appellants argue that genuine issues of material fact exist so that summary judgment was improper. Specifically, the appellants point to Trooper Kane's deposition testimony that he never received any training as to when he should quit firing a gun in a situation when he is firing at someone. The appellants also rely on the deposition testimony of their expert witness that the gener-

---

7. This Court previously has recognized that *Will* prohibits § 1983 suits against the states. In *Gribben v. Kirk*, 195 W.Va. 488, 495, 466 S.E.2d 147, 154 (1995), we explained:

In fact, the United States Supreme Court specifically has held that the federal cause of action for remedying violations pursuant to 42 U.S.C. § 1983 does not *lie* against the states regardless of whether the claim is pursued in federal or state court. The Supreme Court has said it "cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent." *Will v. Michigan Department of State Police*, 491 U.S. 58, 67, 109 S.Ct. 2304, 2310, 105 L.Ed.2d 45, 56 (1989). (Footnote omitted.).

ally accepted police training is to continue to fire the weapon until the immediate threat stops. According to the appellants, this testimony raises the genuine issue of whether Trooper Kane was properly trained as to when to cease firing his gun.

The Department responds in its brief that at another point in his deposition, Trooper Kane responded to a question by the appellants' counsel by indicating that the State Police had instructed him to fire his weapon until the threat is gone. The Department contends that the portion of Trooper Kane's deposition testimony relied upon by the appellants is insufficient to survive a summary judgment motion.

■■■■ After reviewing the portions of Trooper Kane's deposition cited to us by the parties, we agree with the appellants that there are genuine issues of fact that preclude summary judgment on the appellants' state law failure to instruct and/ or supervise claim.[8] As noted by the appellants, at one point in his deposition, Trooper Kane testified that he had not received any kind of training as to when a state trooper is sup-

posed to quit firing his gun. At another point in the deposition, however, Trooper Kane indicated that he was taught to stop firing when the immediate threat is gone. We believe that this conflict in testimony creates a genuine issue of material fact for the trier of fact to resolve. Whether Trooper Kane received instruction on when to stop firing is certainly material to the issue of whether he was properly trained. Also, the resolution of this issue at trial may rest upon whether the jury finds Trooper Kane's testimony credible. "In assessing the factual record, we must grant the nonmoving party the benefit of inferences, as '[c]redibility determinations . . . are jury functions, not those of a judge[.]'" *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 59, 459 S.E.2d 329, 336 (1995), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202, 216 (1986). Further, "when a party can show that demeanor evidence legally could affect the result, summary judgment should be denied." *Williams,* 194 W.Va. at 59, 459 S.E.2d at 336. While it is true that "the party opposing summary judgment must satisfy the burden of proof by

---

**8.** We agree with the circuit court that judicial and equitable estoppel do not prevent the Department from raising defenses to the appellants' state law claims. The appellants' contention on this issue is based on certain comments made by the county prosecutor to a grand jury for the alleged purpose of dissuading the grand jury from indicting Trooper Kane of any crimes in the killing of Charles Pruitt. According to the appellants, the prosecutor represented to the grand jury that the appellants had filed a lawsuit against the Department and Trooper Kane in which the appellants could present all of their evidence at trial and win a verdict of thirty million dollars. The appellants argue that it would be unfair to permit the state to use the appellants' civil action to prevent Trooper Kane's indictment and then allow the state to reverse positions and raise defenses in order to prevent a civil trial.

Under our law,
Judicial estoppel bars a party from re-litigating an issue when: (1) the party assumed a position on the issue that is clearly inconsistent with a position taken in a previous case, or with a position taken earlier in the same case; (2) the positions were taken in proceedings involving the same adverse party; (3) the party taking the inconsistent positions received some benefit from his/her original position; and (4) the original position misled the adverse party so that allowing the estopped party to change his/her

position would injuriously affect the adverse party and the integrity of the judicial process.
Syllabus Point 2, *Dept. of Transp. v. Robertson,* 217 W.Va. 497, 618 S.E.2d 506 (2005). We find that judicial estoppel does not apply here because, among other reasons, the State Department of Public Safety and the McDowell County prosecutor simply cannot be deemed to be the same party for estoppel purposes absent any evidence that they were acting in privity with one another.
Concerning equitable estoppel, this Court has held:
The general rule governing the doctrine of equitable estoppel is that in order to constitute equitable estoppel or estoppel in pais there must exist a false representation or a concealment of material facts; it must have been made with knowledge or the means of knowledge, actual or constructive of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to his prejudice.
Syllabus Point 6, *Stuart v. Realty Corp.,* 141 W.Va. 627, 92 S.E.2d 891 (1956). We do not believe that these elements can be satisfied under the instant facts. Thus, we reject the appellants' argument based on estoppel.

offering more than a mere 'scintilla of evidence' and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor[,]" 194 W.Va. at 60, 459 S.E.2d at 337, citing Anderson, 477 U.S. at 252, 106 S.Ct. at 2512, 91 L.Ed.2d at 214, "[i]n cases of substantial doubt, the safer course of action is to deny the motion and to proceed to trial." 194 W.Va. at 59, 459 S.E.2d at 336. Under these facts, we believe that the safer course is to reverse the circuit court's dismissal of the appellants' failure to train and/or supervise claim and let it proceed to trial.

■■■■ Next, we note that the appellants clearly allege in their complaint that the Department is vicariously liable for Trooper Kane's wrongful conduct. The circuit court's summary judgment order, however, makes absolutely no findings of fact or conclusions of law on this issue. This Court has held concerning vicarious liability that:

An agent or employee can be held personally liable for his own torts against third parties and this personal liability is independent of his agency or employee relationship. Of course, if he is acting within the scope of his employment, then his principal or employer may also be held liable.

Syllabus Point 3, Musgrove v. Hickory Inn, Inc., 168 W.Va. 65, 281 S.E.2d 499 (1981). Under this rule, the Department may be liable for any wrongful acts found to be committed by Trooper Kane. Especially significant with regard to the appellants' allegation of vicarious liability against the Department is the fact that the circuit court denied Trooper Kane's motion for summary judgment after finding that whether his actions

were reasonable or justified are issues of fact for the jury.

■■■■ The Department argues on appeal that the doctrine of qualified or official immunity bars a claim of mere negligence against the Department. Concerning qualified or official immunity, this Court has held:

A public executive official who is acting within the scope of his authority and is not covered by the provisions of W.Va.Code, 29–12A–1, et seq.,[9] is entitled to qualified immunity from personal liability for official acts if the involved conduct did not violate clearly established laws of which a reasonable official would have known. There is no immunity for an executive official whose acts are fraudulent, malicious, or otherwise oppressive. To the extent that State ex rel. Boone National Bank of Madison v. Manns, 126 W.Va. 643, 29 S.E.2d 621 (1944), is contrary, it is overruled.

Syllabus, State v. Chase Securities, Inc., 188 W.Va. 356, 424 S.E.2d 591 (1992) (footnote added). Trooper Kane is a public official employed by the State, not a political subdivision,[10] and is therefore not covered by the provisions of W.Va.Code § 29–12A–1, et seq. Accordingly, under Chase Securities, Trooper Kane would enjoy immunity from personal liability for official acts if his conduct did not violate clearly established laws of which a reasonable official would have known and if his acts were not fraudulent, malicious, or otherwise oppressive. Regarding the issue of the Department of Public Safety's immunity for Trooper Kane's alleged wrongful acts, we have held:

In cases arising under W.Va.Code § 29–12–5,[11] and in the absence of express provisions of the insurance contract to the contrary, the immunity of the State is coterminous with the qualified immunity of a

---

9. W.Va.Code § 29–12A–1, et seq., is known as the Governmental Tort Claims and Insurance Reform Act, a purpose of which is to limit liability of political subdivisions.

10. W.Va.Code § 29–12A–3(e) (1986) expressly indicates that the term "State" under the Act does not include political subdivisions.

11. W.Va.Code § 29–12–5 (2006) concerns the power of the state board of risk and insurance management to acquire insurance for the state. In Syllabus Point 2 of Pittsburgh Elevator v. W.

Va. Bd. of Regents, 172 W.Va. 743, 310 S.E.2d 675 (1983), this Court held that "[s]uits which seek no recovery from state funds, but rather allege that recovery is sought under and up to the limits of the Slate's liability insurance coverage, fall outside the traditional constitutional bar to suits against the State." In their complaint, the appellants state that they are suing the Department of Public Safety and other defendants under and up to the maximum limit of the defendants' liability insurance coverage.

public executive official whose acts or omissions give rise to the case. However, on occasion, the State will be entitled to immunity when the official is not entitled to the same immunity; in others, the official will be entitled to immunity when the State is not. The existence of the State's immunity of the State [sic] must be determined on a case-by-case basis.

Syllabus Point 9, *Parkulo v. West Virginia Bd. of Probation,* 199 W.Va. 161, 483 S.E.2d 507 (1996) (footnote added).

Based on the evidence below, we believe there is sufficient evidence for a jury to find that Trooper Kane's conduct violated clearly established laws of which a reasonable official would have known or was fraudulent, malicious, or otherwise oppressive, and therefore is not protected by immunity. Absent express provisions of the insurance contract to the contrary or other exceptions, the jury may find that the Department's liability is coterminous with that of Trooper Kane. Therefore, we believe that genuine issues of material fact preclude the granting of summary judgment on behalf of the Department on the appellants' state law claims.

### IV

### CONCLUSION

For the reasons stated above, we affirm the circuit court's grant of summary judgment on behalf of the Department of Public Safety on the appellants' claims under 42 U.S.C. § 1983. However, we reverse the circuit court's grant of summary judgment on behalf the Department of Public Safety on the appellants' state law claims, and we remand for further proceedings on those claims. Accordingly, the November 29, 2006, order of the Circuit Court of Kanawha County is affirmed in part, reversed in part, and remanded.

Affirmed in part, reversed in part, and remanded.