736 S.E.2d 351

**Raymond A. HINERMAN, Sr., and Barbara B. Hinerman, Husband and Wife, Plaintiffs Below, Petitioners**

v.

**Richard A. RODRIGUEZ, and Rita C. Rodriguez, Husband and Wife, Defendants Below, Respondents.**

No. 11–0595.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 23, 2012.

Decided Nov. 9, 2012.

Raymond A. Hinerman, Esq., Hinerman & Associates, Weirton, WV, Pro se, for the Petitioners.

Gary S. Wigal, Esq., Gianola, Barnum, Wigal & London, Morgantown, WV, for the Respondents.

PER CURIAM:

This appeal concerns the sale of a residence in Morgantown, West Virginia. The "buyers," Raymond A. Hinerman, Sr., and Barbara B. Hinerman, husband and wife, plaintiffs below, appeal from a July 13, 2011, order of the Circuit Court of Monongalia County. The order denied the buyers' motion to alter or amend the partial summary judgment entered in favor of the defendants, Richard A. Rodriguez and Rita C. Rodriguez, husband and wife, the "sellers." [1]

1. The buyers' motion to reconsider the partial summary judgment was correctly treated by the circuit court as a motion to alter or amend the judgment pursuant to W.Va. R. Civ. P. 59(e). *Riffe v. Armstrong,* 197 W.Va. 626, 636, 477 S.E.2d 535, 545 (1996), *modified on other*

The buyers sought compensatory and punitive damages from the sellers regarding water leakage in a basement storage room of the residence the buyers purchased. The leak was disclosed to the buyers after the signing of the Purchase Agreement and before the closing of the sale. In granting partial summary judgment to the sellers, the circuit court concluded that the buyers' claims were without merit because they were on notice of the water leak prior to the closing of the sale.

Seeking reversal of the partial summary judgment, the buyers ask this Court to direct that they be granted judgment on the issue of liability or to remand this action to the circuit court for discovery.

Upon careful review of the briefs and argument of the parties, the record-appendix and the law pertaining to this matter, this Court is of the opinion that the entry of the partial summary judgment and the denial of the motion to alter or amend constituted error and that this action should be remanded for discovery. In addition, an amendment requested by the buyers to the deed delivered to them by the sellers is warranted. Accordingly, the July 13, 2011, order of the Circuit Court of Monongalia County is reversed, and this action is remanded for further proceedings consistent with this opinion.

### I.

### Factual Background

In June 2010, the sellers entered into a Real Estate Listing Agreement with KLM Properties, Inc., Kathy L. Martin, broker, placing their residence on Eastlake Drive in Morgantown on the market. Following a series of offers and counteroffers, a Uniform Real Estate Purchase Agreement was signed stating that the sellers would convey the residence to the buyers for $1,300,000. The sellers and buyers signed the Purchase Agreement on October 4th and 5th 2010, re-

*grounds,* syl. pt. 4, *Moats v. Preston County Commission,* 206 W.Va. 8, 521 S.E.2d 180 (1999) (motion for relief from summary judgment denominated a motion to "reconsider" is a Rule 59(e) motion).

spectively. The closing of the sale, occurring over a two-day period, did not take place until December 31, 2010, and January 3, 2011.

The controversy concerns a storage room in the basement of the residence. The buyers state that they conducted a personal inspection of the house prior to signing the Purchase Agreement but were unable to inspect the storage room because, even though the sellers had moved to Michigan, the room "was full of children's toys stacked from the floor to the ceiling." Later attempts by the buyers to inspect the room were unsuccessful because the door to the room was locked or jammed shut. Soon after the Agreement was signed, the sellers, on October 13, 2010, completed a Disclosure Statement declaring that there had never been "any water leakage, accumulation, or dampness within the basement or crawl space." [2]

Later, seller Mrs. Rodriguez returned to the house. She stated that on December 19, 2010, she discovered water in the basement storage room while removing personal property. Mrs. Rodriguez further stated that she immediately reported the problem to Kathy Martin of KLM Properties, Inc., and had the room professionally dried. On December 21, 2010, prior to the closing, KLM advised the buyers that the room had a water leak which had just been discovered. The buyers personally inspected the room the following day and noted a "strong musty smell and obvious water leak." [3]

The water leak was later addressed in a December 22, 2010, letter from the sellers'

attorney to the buyers. The letter stated in part:

> I understand that you were anxious to close on the purchase of the above referenced property, however due to my [clients'] recent discovery of the wet carpet in the basement, which has been disclosed to you, I felt that it was in the best interests of all parties to delay the closing until December 31, 2010. This delay will afford you the opportunity, should you choose, to assess the wet carpet issue and thereby to make an informed decision whether or not to proceed to purchase the property "as is" as stated in the signed contract between the parties with full knowledge of this water issue.

Thereafter, the sellers informed the buyers that the sale could not go forward unless the buyers assumed responsibility for the leak and its consequences. The buyers refused the sellers' demand and insisted that the sale proceed.

## II.

### Procedural Background

On December 27, 2010, prior to the closing of the sale, the buyers filed a lawsuit alleging that the water problem in the basement storage room was the sellers' responsibility. The buyers sought compensatory damages and, in addition, punitive damages for fraud. The buyers asked the circuit court to compel the sellers to proceed with the closing of the sale and deliver a deed "containing covenants of General Warranty, free and clear of all liens and encumbrances," as specified in the Purchase Agreement.[4]

---

**2.** The Disclosure Statement included the following caveat: "This is a disclosure of Seller's knowledge of the condition of the property as of the date signed by Seller [October 13, 2010] and is not a substitute for any inspections or warranties that Buyer may wish to obtain." Moreover, paragraph 17 of the Purchase Agreement stated in part: "Regardless of Buyer's review of the Property Disclosure Statement, Buyer may exercise Buyer's rights pertaining to the inspections reserved in any other contingency set forth in this Agreement."

**3.** It should be noted that the buyers have not identified any defective conditions of the residence that existed prior to the signing of the October 2010 Purchase Agreement. The petition

for appeal filed by the buyers in this Court states that "the leak occurred after the Purchase Agreement was signed." Specifically, the petition alleges that the property was to be deeded to the buyers in the condition it was in at the time of the signing of the Purchase Agreement, "not as it was after the damage which occurred after October 13, [2010,]" the date of the Disclosure Statement. Notwithstanding those statements, however, the record-appendix before this Court indicates that the specific cause of the leak and when it began have yet to be determined.

**4.** The buyers further asserted that they were falsely induced to sign the Purchase Agreement, in part, by the representation of the sellers that a boat would be included in the purchase price of

The closing of the sale and conveyance of title to the buyers took place on December 31, 2010, and January 3, 2011, subject to the lawsuit. Thereafter, the buyers amended the complaint, clarifying that their claim for compensatory damages included either the cost of correcting the damage caused by the water leak or an amount reflecting the diminished value of the property because of the water leak discovered after the Purchase Agreement was signed.[5]

The sellers did not answer the complaint; instead, they promptly filed a motion for summary judgment. In response, the buyers filed a motion on January 20, 2011, pursuant to Rule 56(f) of the *West Virginia Rules of Civil Procedure*, asking the circuit court to allow discovery before ruling on the summary judgment motion. Rule 56(f) states:

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavits facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

The buyers contended that no responsive pleading to either the complaint or the amended complaint had been filed and that no scheduling order had been entered by the circuit court. Moreover, attached to the buyers' motion was a copy of a letter from their attorney to the sellers' attorney stating that the buyers intended to take depositions of the sellers and their real estate broker, Kathy L. Martin. The buyers argued that discovery was needed to explore such matters as: when the water leak began; when it was discovered; the extent of the damage and its impact on the fair market value of the property; whether the sellers were at fault in

causing or neglecting the leak; whether they concealed the problem; and whether any representations concerning the water leak were made to the buyers prior to the closing.[6]

In February 2011, a hearing was conducted during which the circuit court granted partial summary judgment for the sellers on all issues concerning the sale of the residence. In a March 4, 2011, order setting forth the ruling, the circuit court emphasized that the buyers had notice of the water leak prior to the closing of the sale. The order stated:

> The Uniform Purchase Agreement contains the standard real estate contingency that permitted the [buyers] to have the house inspected for defects in its various systems prior to purchase. Nevertheless, the [buyers] did not have the house professionally inspected as provided for in the contract, but relied solely on inspections they personally made. * * * The Court further finds than an inspection after the disclosure would have provided the [buyers] the opportunity to withdraw from the purchase of the property had they desired to do so. * * *
>
> [The buyers] received the benefit of the bargain when they received the [sellers'] house in its existing condition, because Paragraph 25 of the Uniform Purchase Agreement expands the "as is" language by stating that "Sellers will make no repairs." Based on the above findings of fact and conclusions of law and the entire record, the Court grants the [sellers'] motion for summary judgment as there are no genuine issues of material fact on the fraud count or the breach of contract count[.]

In June 2011, a hearing was conducted on the buyers' motion to alter or amend the partial summary judgment. *See*, n. 1, *supra.* During the hearing, the buyers, *inter alia,*

---

the property. The issue concerning the boat is not part of this appeal.

5. The circuit court docket sheet in this action indicates that a second amended complaint was filed by the buyers against KLM Properties, Inc., and its broker in June 2011. That complaint is not included in the appendix-record before this Court.

6. With regard to the allegation of fraud, the reply brief filed by the buyers in this Court states: "[The buyers] concede, without the depositions of Kathy L. Martin, realtor, and the two [sellers], the issue of fraud is 'thin.' However, the Court in denying the continuance, prevented the issue from being fully developed."

repeated their assertion that the granting of summary judgment prior to the entry of a scheduling order and the completion of discovery was improper. The circuit court, however, denied the motion to alter or amend in the order entered on July 13, 2011. This appeal followed.

## III.

### Standard of Review

In syllabus point 1 of *West Virginia Department of Transportation v. Robertson,* 217 W.Va. 497, 618 S.E.2d 506 (2005), this Court confirmed: "Appellate review of a partial summary judgment order is the same as that of a summary judgment order, which is *de novo.*" Syl. pt. 1, *Noland v. Virginia Insurance Reciprocal,* 224 W.Va. 372, 686 S.E.2d 23 (2009). *See also, Tolliver v. The Kroger Company,* 201 W.Va. 509, 513, 498 S.E.2d 702, 706 (1997) (review of a circuit court's decision to grant partial summary judgment is plenary).[7] Here, the partial summary judgment was followed by the denial of the buyers' motion to alter or amend. Accordingly, we look to syllabus point 1 of *Wickland v. American Travellers Life Insurance Company,* 204 W.Va. 430, 513 S.E.2d 657 (1998), where this Court held:

> The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W.Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed.

Syl. pt. 1, *Judy v. Grant County Health Department,* 210 W.Va. 286, 557 S.E.2d 340 (2001).

Moreover, in syllabus point 2 of *Mey v. Pep Boys–Manny, Moe & Jack,* 228 W.Va. 48, 717 S.E.2d 235 (2011), this Court said:

> A motion under Rule 59(e) of the West Virginia Rules of Civil Procedure should

be granted where: (1) there is an intervening change in controlling law; (2) new evidence not previously available comes to light; (3) it becomes necessary to remedy a clear error of law or (4) to prevent obvious injustice.

Syl. pt. 1, *Acord v. Colane Company,* 228 W.Va. 291, 719 S.E.2d 761 (2011).

## IV.

### Discussion

#### A.

#### The Purchase Agreement

The March 4, 2011, order entering partial summary judgment and the transcript of the hearing on the buyers' motion to alter or amend make clear that the rulings of the circuit court were based on the Purchase Agreement signed by the parties in October 2010. The Agreement stated that the purchase price for the property was $1,300,000 and that the sellers would deliver a deed "containing covenants of General Warranty, free and clear of all liens and encumbrances."

Paragraph 6 of the Purchase Agreement stated that, in the event of destruction or damage "because of fire, flood or an act of nature" prior to closing, the buyers could terminate the Agreement or recover "any insurance proceeds payable on account of the damage or destruction, not to exceed the purchase price." Paragraph 6 also stated that the risk of loss would be on the buyers after the closing and the delivery of the deed.

Subsection F, paragraph 12, of the Purchase Agreement preserved the buyers' right to inspect and request repairs. Under subsection F, in the event of discovery of defects requiring repairs, the buyers had the option of notifying the sellers: (1) that they are terminating the Agreement or (2) that they require the sellers to repair the defects. Pursuant to subsection F, where the buyers elect to require the sellers to repair the

---

7. In *Toth v. Board of Parks and Recreation Commissioners,* 215 W.Va. 51, 593 S.E.2d 576 (2003), we held in syllabus point 4:

> While our standard of review for summary judgment remains *de novo,* a circuit court's order granting partial summary judgment must set out factual findings sufficient to permit meaningful appellate review. Findings of fact, by necessity, include those facts which the circuit court finds relevant, determinative of the issues and undisputed.

Syl. pt. 2, *Pruitt v. West Virginia Department of Public Safety,* 222 W.Va. 290, 664 S.E.2d 175 (2008).

defects, the sellers had the option to: (1) repair the defects, (2) negotiate the repairs to be made, or (3) refuse to make the repairs, thereby, permitting the buyers to terminate the Agreement.

Finally, paragraphs 23 and 25 of the Agreement are of particular importance. Paragraph 23 provided, in part:

Pre-closing walk-through inspection: [Buyers] shall have the right to re-inspect Property prior to closing in order to ascertain that the Property *is in the same physical condition as it was as of the date of this Agreement* and to verify that all repairs, if any, have been performed as agreed upon by [Buyers and Sellers]. * * * Failure to conduct a final walk-through inspection and report results shall be deemed a waiver of [Buyers'] final inspection and repair rights and [Buyers agree] to accept Property in its present condition. (emphasis added)

Paragraph 25 stated: "It is understood this property is being sold 'as is' and Sellers will make no repairs. However, [Buyers have] the right to have inspections as stated in Item # 12[.]"

The sellers contend that the partial summary judgment and the denial of the motion to alter or amend should be affirmed. With regard to responsibility to compensate for the water leak problem, the sellers maintain that the circuit court correctly based its decision on the provisions of the Purchase Agreement, particularly paragraph 25. That paragraph stated: "It is understood this property is being sold 'as is' and Sellers will make no repairs." Thus, the sellers assert that they were entitled to judgment as a matter of law on the buyers' breach of contract claim and that there was no reason, as to that claim or the fraud claim, to continue the action to pursue discovery.

Moreover, the sellers insist that no fraud occurred because it is undisputed that they made the buyers aware of the water problem prior to the closing. After KLM Properties, Inc., disclosed the leak to the buyers, the sellers' attorney sent the buyers a letter advising them to assess the problem before deciding whether to proceed with the purchase of the property. The buyers ignored their option to terminate the Purchase Agreement, failed to conduct an inspection beyond a personal observation of the basement room and simply demanded a consummation of the sale.

On the other hand, the buyers contend that the "as is" and "no repair" provisions of paragraph 25 related to the condition of the property as it was in October 2010 when the Purchase Agreement was signed by the parties, rather than the condition of the property at the time of the closing in December 2010 and January 2011. Thus, since the water problem ostensibly occurred after the Purchase Agreement was executed, paragraph 25 would not apply, and the sellers are responsible for the problem. Consequently, the buyers assert that the sellers should either pay the buyers for the cost of repairs or compensate the buyers for the reduction in the fair market value of the property. Moreover, the buyers maintain that they preserved their rights under the Purchase Agreement by personally inspecting the room in December 2010 after having been unable to gain access to view the problem on two previous occasions. The buyers, therefore, rely on paragraph 23 of the Purchase Agreement which provides for a pre-closing walk-through "in order to ascertain that the Property *is in the same physical condition as it was as of the date of this Agreement* [.]" (emphasis added)

Notwithstanding the above, the buyers assign as error the circuit court's failure to grant their Rule 56(f) motion to allow discovery.

The issues surrounding the Purchase Agreement were largely resolved in this Court's decision in *Bryant v. Willison Real Estate Co.*, 177 W.Va. 120, 350 S.E.2d 748 (1986). In *Bryant,* a form purchase agreement was signed for the sale of a building. The agreement placed the risk of loss prior to delivery of the deed on the sellers. Before the deed was delivered, a water line broke permitting water to run throughout the building and into adjoining businesses. The purchasers asked the sellers to repair the damage or permit the agreement to be rescinded. The sellers refused to make repairs

and sold the building to a third party. Following a bench trial, the circuit court ruled that the purchasers were not entitled to a return of their initial down payment and were liable for the damages to the adjoining businesses.

 Upon appeal, this Court reversed and remanded the action for further proceedings. Syllabus points 4 and 5 of *Bryant* hold:

4. Where the risk of loss is on the vendor and the casualty damage to the property is not substantial, the purchaser is entitled to sue for specific performance, and the purchase price is abated to the extent the property was damaged.[8]

5. Where the risk of loss is on the vendor and there is substantial damage to the property, the appropriate remedy ordinarily is to terminate the contract and return the down payment to the purchaser.

In the current matter, the buyers note the language of paragraph 6 of the Purchase Agreement which says that the risk of loss is on the buyers "after the closing and the delivery of the deed." During oral argument before this Court, the sellers acknowledged that, prior to the closing, the risk of loss was on the sellers. The sellers argue, however, that paragraph 6 limits the remedies available to the buyers, in regard to the water intrusion, to either a termination of the Purchase Agreement or "any insurance proceeds payable on account of the damage." Nevertheless, as this Court said in *Bryant* concerning a comparable contract provision, such a provision may not be read to shift the risk of loss to the buyers, i.e., the provision "is nothing more than an acknowledgment of the general rule that both parties to an executory contract for the sale of real property have an insurable interest." 177 W.Va. at 124, 350 S.E.2d at 751. Here, paragraph 6 does not state that the recovery of insurance proceeds by the buyers would constitute the exclusive remedy. Moreover, any remedy under paragraph 6 is conditioned, in the circumstances herein, upon damage caused by "flood or an act of nature," matters uncertain at this point in the absence of discovery.

 Upon further analysis of the Purchase Agreement, this Court concludes that the buyers are correct in their contention that the "as is" and "no repair" language of the Agreement relate to the condition of the property as it was on the date the Purchase Agreement was signed. The Purchase Agreement language in paragraph 25 essentially says that the property was to be sold "as is" in the condition as of the date of the Purchase Agreement.[9] The more specific language found in paragraph 23 of the Agreement provides for the pre-closing walk-through "in order to ascertain that the Property *is in the same physical condition as it was as of the date of this Agreement* [.]" (emphasis added) The Purchase Agreement's "as is" and "no repair" language did not relate to defects (water leakage) that occurred after the date the Agreement was signed.

The *Bryant* opinion states:

The trial court also referred to the sentence in the contract that "[t]his contract is also subject to 'As Is' condition" as indicating an intention not to deliver the building in a specific condition. We agree with this condition insofar as it would dispel any claim by the purchasers to require the vendors to make any improvements to the building from the condition it was in at the time the contract was signed. * * *

The purpose of this type of provision is not to shift the risk of loss in the event the building is damaged without fault on the part of either party. Rather the use of an "as is" provision in a real estate sales contract is generally intended to negate the existence of any warranty as to the particular fitness or condition of the property. *This type of clause simply means*

---

8. *See,* W.E. Shipley, Annotation, *Change of Conditions After Execution of Contract or Option for Sale of Real Property as Affecting Right to Specific Performance,* 11 A.L.R.2d 390 (1950).

9. The provisions relied on by the sellers in paragraph 25 are only a portion of that paragraph. Paragraph 25 limits the language relied on by the sellers by further stating that the buyers have "the right to have inspections as stated in Item # 12[.]" As noted above, paragraph 12(F) contains a number of options for both the buyers and the sellers following an inspection of the property.

*that the purchaser must take the premises covered in the real estate sales contract in its present condition as of the date of the contract.*

(emphasis added) 177 W.Va. at 124, 350 S.E.2d at 752.[10]

Accordingly, the sellers were not entitled to judgment as a matter of law based on the Purchase Agreement. Nevertheless, in the context of this action, it would likewise be inappropriate to conclude that the buyers are entitled to judgment as a matter of law. As the buyers correctly suggest, a number of questions of material fact concerning the water leak problem were left unresolved by the circuit court at the time the partial summary judgment order was entered. No scheduling order had been entered and discovery had hardly begun.[11]

## B.

### Discovery

The appendix-record in this matter reveals that the buyers conducted a personal inspection of the basement storage room on December 22, 2010, at the beginning of the holiday season. They insist that they had been unable to gain access to the room on two prior occasions. Although it is undisputed that the buyers were on notice of the water problem prior to the closing of the sale, (1) the cause of the leak, (2) when it occurred, (3) whether the problem has a substantial effect on the habitability and value of the property, and (4) whether the sellers were at fault for causing the leak or allowing it to continue,[12] were among the questions

prematurely cut off by the judgment of the circuit court. In fact, an issue appears in the record concerning whether the water leakage problem was due to an act of nature or simply caused by misplaced downspouts on the house.

■■ In syllabus point 1 of *Powderidge Unit Owners Association v. Highland Properties,* 196 W.Va. 692, 474 S.E.2d 872 (1996), this Court held:

An opponent of a summary judgment motion requesting a continuance for further discovery need not follow the exact letter of Rule 56(f) of the West Virginia Rules of Civil Procedure in order to obtain it. When a departure from the rule occurs, it should be made in written form and in a timely manner. The statement must be made, if not by affidavit, in some authoritative manner by the party under penalty of perjury or by written representations of counsel. At a minimum, the party making an informal Rule 56(f) motion must satisfy four requirements. It should (1) articulate some plausible basis for the party's belief that specified "discoverable" material facts likely exist which have not yet become accessible to the party; (2) demonstrate some realistic prospect that the material facts can be obtained within a reasonable additional time period; (3) demonstrate that the material facts will, if obtained, suffice to engender an issue both genuine and material; and (4) demonstrate good cause for failure to have conducted the discovery earlier.

*See, Elliott v. Schoolcraft,* 213 W.Va. 69, 73, 576 S.E.2d 796, 800 (2002) (citing syllabus

---

**10.** The two cases relied on by the circuit court, *Logue v. Flanagan,* 213 W.Va. 552, 584 S.E.2d 186 (2003), and *Thacker v. Tyree,* 171 W.Va. 110, 297 S.E.2d 885 (1982), are not on point. Unlike the pre-closing disclosure herein, both *Logue* and *Tyree* involved allegations of a vendor's failure to disclose a defect in the property which was not reasonably discoverable by the purchaser. However, although the opinion in *Logue* discusses, generally, the use of an "as is" clause in a contract of sale, neither *Logue* nor *Tyree* discusses a purchase agreement placing the risk of loss on the vendor and relating the "as is" clause to the date the agreement was signed. Moreover, *Logue,* a *per curiam* opinion, does not discuss *Bryant,* decided in 1986 after *Tyree* but before *Logue.*

**11.** W.Va. R. Civ. P. 16(b)(3) indicates that one of the purposes of a scheduling order is to limit the time to complete discovery. In this action, however, virtually no discovery had taken place in the period between the filing of the complaint on December 27, 2010, and the entry of partial summary judgment on March 4, 2011.

**12.** The *Bryant* opinion observed: "It would appear that where the risk of loss is on the purchaser and the damage to the property is caused by the negligence of the vendor, the vendor must bear the risk of loss." 177 W.Va. at 123 n. 3, 350 S.E.2d at 750 n. 3.

**127**

point 1 of *Powderidge* and confirming that, as a general rule, summary judgment is appropriate only after adequate time for discovery).

The buyers' Rule 56(f) motion to continue the action to pursue discovery, including the taking of depositions, was warranted. The refusal of the circuit court to allow discovery constituted reversible error.

## C.

### The Language of the Deed

In the complaint, and by separate motion for injunctive relief, the buyers asked the circuit court to direct the sellers to proceed with the closing and deliver a deed to the buyers "containing covenants of General Warranty, free and clear of all liens and encumbrances," as specified in the Purchase Agreement. In an order entered on February 2, 2011, however, the circuit court noted that the sellers agreed to deliver a deed to the buyers at the closing with covenants of "general warranty," and that the buyers' request concerning the language of the deed was, therefore, moot. The deed was received by the buyers over their objection. The buyers contend that the circuit court committed error by failing to direct the sellers to deliver a deed to the property containing the additional language "free and clear of all liens and encumbrances."

Although the buyers assert that the additional language would enhance the deed beyond the covenant of general warranty, their principal assertion is that the additional language was required by the Purchase Agreement. That assertion has merit. The October 2010 Purchase Agreement stated that the purchase price for the property was $1,300,000 and specified that the sellers would deliver a deed "containing covenants of General Warranty, free and clear of all liens and encumbrances." There is no ambiguity in the Agreement concerning the inclusion of the additional language, and the buyers are entitled to the benefit of their bargain. The circuit court, therefore, committed error in failing to direct the sellers to deliver a deed to the buyers setting forth the language required by the Purchase Agreement.

## V.

### Conclusion

For the reasons expressed above, the July 13, 2011, order of the Circuit Court of Monongalia County is reversed, the partial summary judgment order is set aside, and this action is remanded for further proceedings consistent with this opinion, including permitting discovery and the amendment of the deed to include the language: "containing covenants of General Warranty, free and clear of all liens and encumbrances," as specified in the Purchase Agreement.

**Reversed and Remanded.**