573 S.E.2d 12

**Randall Floyd BELCHER, Charles Eugene Belcher, Plaintiffs Below, Appellants,**

**Richard L. Agee, Melva C. Agee and Kenneth Agee, Defendants/Third Party Plaintiffs Below, Appellees,**

v.

**George R. POWERS and Norva Belcher, Third Party Defendants Below, Appellees.**

No. 30432.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 18, 2002.

Decided Oct. 11, 2002.

John N. Charnock, Jr., Charnock & Charnock, Charleston, West Virginia, Attorney for the Appellants.

Leonard H. Higgins, W. Dale Greene, Charleston, West Virginia, Attorneys for the Appellees, Richard L. Agee, Melva C. Agee and Kenneth Agee.

Charles M. Love, III, P. Nathan Bowles, Jr., Bowles Rice McDavid Graff & Love, Charleston, West Virginia, Attorney for the Appellee, George R. Powers.

Shannon Bland, Bland & Bland, Charleston, West Virginia, Attorney for the Appellee, Norva Belcher.

PER CURIAM:

This case is an appeal by the plaintiffs below, Randall Floyd Belcher and Charles Eugene Belcher, from the May 29, 2001, final order of the Circuit Court of Kanawha County involving an action for injunctive relief to prohibit the unlawful taking of private property. The specific issue in this appeal is whether the circuit court correctly construed a deed in its determination of the amount of land reserved for use as a family cemetery. Appellants contend that the lower court erred in finding for the defendants/third party plaintiffs below, Richard L. Agee, Melva C. Agee, and Kenneth Agee, and the third party defendants below, Norva Belcher and George R. Powers, because the recorded deeds involving a tract of land, which was subdivided into seven lots in 1959, together with a map attached to one of the recorded deeds and referenced in the remaining deeds established a reservation of a cemetery larger in size than that determined by the lower court. After thorough review of the petition for appeal, the entire record and the briefs of the parties as well as careful consideration of the arguments made before this Court, the final order of the circuit court is reversed for the reasons set forth below.[1]

## I. Factual and Procedural Background

The controversy in this case involves the interpretation of deeds to land located in the Elk District of Kanawha County, West Virginia. The deeds in question were created in 1959 when Lucy Copen Belcher subdivided a sixty-nine-acre tract of land into seven lots for conveyance to family members. More specifically, the matter before this Court concerns the size of a family cemetery reserved in the deeds to lots five and six of this subdivision.

Lucy Belcher conveyed lot five on January 5, 1959, to Leeroy and Mary A. Belcher. Appellants, who are brothers, inherited lot five directly from Mary A. Belcher upon her death on December 25, 1989. The deed to lot five contains a metes and bounds description which concludes with:

> containing 9.9 acres, more or less, and being Lot No. Five (5) as shown upon a map of the division of a tract of 69 acres, belonging to Lucy Belcher, the party of the first part, and a copy of the map of the

---

1. A cross assignment of error was raised in this appeal by the third party defendants below regarding the manner in which the lower court assessed costs. Our reversal of the lower court's final order makes examination of this issue inappropriate at this time.

division of the said 69 acre tract is herewith filed and made a part of this deed.

The next paragraph of the lot five deed sets forth the following reservation:

It is understood by and between the parties hereto, that the roads as now located and established, shall remain open for the benefit of the Belcher family; and the party of the first part does also reserve from this conveyance the cemetery and the road leading to and from the cemetery, which cemetery is to be the burial place for the Belcher family.

The map recorded with the lot five deed [2] on July 13, 1963, portrays the location of all seven lots in the subdivision of the sixty-nine-acre tract, as well as a boxed area labeled "CEMETERY" in which a road crossing both lot five and lot six is depicted.[3]

Lot six of the sixty-nine-acre tract also was conveyed on January 5, 1959, when Lucy Copen Belcher transferred the lot to George and Opal Belcher. The lot six deed was recorded on December 8, 1960, and described the conveyance as

containing 9.99 acres and being Lot Number Six (6) as shown on a map of the division of [a] 69 acre tract belonging to Lucy Copen Belcher, the party of the first part, and a copy of the map of the division of the said 69 acres is filed and recorded with the deed to Leeroy Belcher and Mary A. Belcher from Lucy Copen Belcher, to which map and deed reference may be had.

Immediately following this description is a paragraph setting forth a reservation to lot six which reads, substantially as did the reservation in the deed for lot five, as follows:

It is understood by and between the parties hereto, that the roads as now established shall remain open for the use and benefit of the Belcher family; and the

party of the first part also reserves from this conveyance the cemetery and the road leading to the cemetery, which cemetery is to be the burial place for the Belcher family.

Between 1975 and 1990, several conveyances of property within what was originally designated as lot six occurred. The portion of lot six with which we are herein concerned involves that transferred to Roma and Norva Belcher by deed in 1990. The following is represented in the record as a quote of the language regarding exceptions in the 1990 deed:

And being Lot No. Six (6) as shown on a map of the Division of 69 acre tract belonging to Lucy Copen Belcher, a copy of said map is recorded with the deed to Leroy Belcher and Mary A. Belcher from Lucy Copen Belcher in Deed Book 1387 at page 56–A, LESS and EXCEPTING that certain tract or parcel of land containing 4.9 acres heretofore conveyed to Patricia Lee Turpin as recorded in Deed Book 1779, page 474.... Reference is hereby made to said map, deeds and records for all pertinent purposes.

This conveyance is made subject to all easements and rights-of-way appearing of record and the Belcher cemetery.

... The party of the first part does hereby WARRANT GENERALLY the property herein conveyed.

After Roma Belcher died in 1994, sole ownership of the herein relevant portion of lot six was vested in his wife Norva as the surviving spouse. On October 30, 1995, Norva Belcher conveyed her interest in this portion of lot six to Mr. and Mrs. Agee. The Agee deed described the transfer as:

containing 4.98 acres, more or less, as shown upon a plat entitled, "PLAT OF

2. Because the copy of this map in the reproduced record certified by the circuit court clerk was not completely legible, this Court directed the Clerk to obtain a certified copy of the map, as recorded in the Office of the County Clerk of Kanawha County in Deed Book 1387, Page 56, and file that map together with the record herein, in order that a thorough examination and review of the document could be conducted. The Court takes judicial notice of said map as recorded in the county clerk's office.

3. This map shows the dimensions of the "cemetery box" as 255.6 feet by 255.6 feet, with what appears to be equal portions of that cemetery footage divided between lot five and lot six. Within the "cemetery box" and located entirely on lot six is a smaller square set off by a dotted line with the words "woven wire fence" written next to the dotted line.

SURVEY SHOWING A 4.98 ACRE PARCEL BEING PART OF LOT NO. 6 OF THE LUCY COPEN BELCHER TRACT LOCATED ON THE HEADWATERS OF INDIAN CREEK OF ELK RIVER ELK DISTRICT—KANAWHA COUNTY—WEST VIRGINIA MADE FOR NORVA W. BELCHER, SCALE: 1"=100' DATED SEPT. 9, 1995", by I.A.N. Garcelon, P.S. # 861.... [4]

Thereafter, the following language regarding exceptions appears in the Agee deed:

For the consideration aforesaid, the party of the first part further GRANTS and CONVEYS unto the parties of the second part, as joint tenants with right of survivorship and not as tenants in common, an easement or right of way from Kanawha County Secondary Route 49/2 across Lot Number 5 by way of the dirt road as shown upon the plat aforesaid.

Excepted and reserved from this conveyance that certain cemetery shown upon the plat aforesaid as "Exi[s]ting Cemetery", inside fence area, and a right of way by the way of the dirt road as aforesaid.

This conveyance is made subject to all reservations, easements, restrictions and rights of way as found in all prior deeds in the chain of title . . . .

In April 1997, Mr. and Mrs. Agee conveyed .88 of their roughly 4.98 acres of lot six to Kenneth Agee, their son.[5] As explained in the Agees' brief, this .88 acre parcel included all of what was designated as the "existing graveyard" on the 1995 plat as well as most of what was represented as the lot six portion of the larger cemetery shown on the map referred to by Lucy Copen Belcher in the 1959 deeds.

When the Belcher brothers became aware the Agees were making changes to the subject section of lot six which affected what the brothers alleged to be part of the area reserved as a family cemetery as well as to portions of their own property (lot five), they filed a petition seeking injunctive relief in the circuit court against Mr. and Mrs. Agee and their son Kenneth. The petition filed in the lower court on December 23, 1997, claimed that the Agees trespassed and made changes[6] on the Belcher brothers' land and property adjoining their land which had been reserved for use as a Belcher family cemetery. In addition to injunctive relief, the appellants sought to have the court order the Agees to remove all obstructions from the allegedly reserved larger Belcher family cemetery and the roadway to and from the cemetery, and to repair all damage these changes caused to lot five as well as to the reserved portion of lot six. The Agees denied the allegations, and filed a third-party action[7] against both Norva Belcher, who had sold the property to them, and George Powers, the lawyer who had prepared the title report and deed to the property which Mr. and Mrs. Agee purchased.

The Agees, Norva Belcher and Mr. Powers filed motions for summary judgment in which they recognized that the portion of lot six at issue was subject to a reservation for a cemetery, but only a cemetery the size of the visible, fenced graveyard on the property, which in no way was affected by the changes the Agees made on or to the subject land. Before acting on the motions, the lower court referred the case to a special commissioner.

4. The plat referred to in the 1995 deed is comparable to the map recorded with the lot five deed except the words "woven wire fence" are no longer written next to the smaller square and within the smaller square appears the designation "existing cemetery."

5. Prior to this conveyance, Mr. and Mrs. Agee obtained a quitclaim deed from George Belcher's daughter conveying any right, title and interest that she had in her father's portion of lot six; this action was taken because the daughter had not been joined with her father in an earlier conveyance to dispose of the interest in the property which the daughter inherited from her mother. The reservation clause appearing in the quitclaim deed as quoted in the record reads: "This conveyance is made subject to all restrictions, reservations, conditions, rights and privileges as found in all prior deeds in the chain of title."

6. The specific alterations to the land as described in the complaint include: digging pipe lines; removing trees, top soil and natural grades; and placing a dwelling and outbuildings on the property.

7. The third-party complaint is not before this Court in this appeal.

After conducting an evidentiary hearing, the special commissioner filed his final recommendations on March 15, 2000. The final recommendations included the special commissioner's determination that the cemetery reservation in the 1959 lot six deed was not sufficiently definite to reserve the larger dimensions claimed by the appellants for use as a cemetery, but did reasonably reserve the visible and smaller, fenced cemetery situated in its entirety on that portion of lot six which the Agees owned.

The circuit court judge substantially adopted the recommendations of the special commissioner. In addition to ordering the Agees to restore lot five to its original condition, the lower court made the following rulings in the May 29, 2001, final order regarding the size and location of, as well as access to, the reserved cemetery:

> 2. The Agees be deemed to have a valid deed to Lot 6 excepting only the smaller fenced in cemetery of .07 acre which is shown on the 1995 and 1997 maps [8] in their chain of title.
>
> 3. The plaintiffs, owners of Lot 5, shall have right of access to the smaller fenced cemetery by way of their own section of the cemetery on Lot 5.[9] If no other road through Lot 5 provides access, the Agees shall provide permanent easement to the plaintiffs so that they can reasonably reach the fenced cemetery by way of other parts of Lot 6.

It is from these provisions of the May 29, 2001, order that the Belcher brothers base their appeal to this Court.

## II. Standard of Review

■ As explained in syllabus point four of *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996), "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*." We further note that our review of a circuit court's entry of summary judgment is de novo. Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

## III. Discussion

■ The principal issue confronting us in this appeal is whether the circuit court correctly construed the relevant deeds in the Agee chain of title in order to reach its conclusions regarding the reservation of the cemetery. The appellants contend that, contrary to the lower court's ruling, the language of the deeds involving the 1959 conveyances of lots five and six by Lucy Copen Belcher successfully reserved a cemetery the size shown on the map which was recorded in 1963 with the deed to lot five and which was referenced in the deed to lot six.

Countering this position, the appellees jointly argue in support of the lower court's decision by employing the following reasoning. The appellees claim that the reservation language in the 1959 deed to lot six did not provide information regarding the location, dimensions, boundaries, or markers of the area to be reserved as the Belcher cemetery and the law requires that the land sought to be reserved must be described with particularity. Syl. Pt. 1, *Highway Properties v. Dollar Sav. Bank*, 189 W.Va. 301, 431 S.E.2d 95 (1993); *Sally–Mike Properties v. Yokum*, 175 W.Va. 296, 301–302, 332 S.E.2d 597, 602 (1985); Syl. Pt. 2, *Hall v. Hartley*, 146 W.Va. 328, 119 S.E.2d 759 (1961). While the appellees acknowledge that certainty may be established by reference to extraneous documents or facts, they contend that the purpose of the reference in the 1959 lot six deed to the map was solely to identify the seven subdivisions of the sixty-nine-acre tract because the paragraph setting forth the reservation of a cemetery and the roads leading to the cemetery did not specifically refer to the map. The appellees further assert that the most that could be reserved by the language of the 1959 lot six deed is the visible, fenced graveyard—but only because the lan-

---

8. The 1995 plat was made for Norva Belcher and was referenced in the deed to Mr. and Mrs. Agee. The only other map in the record is that drawn for Lucy Copen Belcher and attached to the deed to lot five.

9. No portion of the cemetery defined in finding two of the May 29, 2001, order extends to lot five.

guage in the 1959 deed to lot six was adequate to alert the reader that there was a cemetery somewhere on the property. In support of this assertion, the appellees cite to our decision in *Bennett v. Smith,* 136 W.Va. 903, 69 S.E.2d 42 (1952), for the proposition that reference to an extraneous document cannot create a reservation or exception if that is not the clearly stated purpose of the reference. Based on the foregoing, the appellees conclude that the circuit court was not clearly wrong in finding ambiguity in the reservation language of the lot six deed and consequently adopting the construction of the deed which was most favorable to the grantee. Syl. Pt. 6, *Paxton v. Benedum–Trees Oil Co.,* 80 W.Va. 187, 94 S.E. 472 (1917).

■■■ While the appellees' argument is cogently made, it fails to account for the considerable emphasis our statutory and case law places on the intention of the parties with regard to the proper construction of deeds. West Virginia Code § 36–1–11 (1923) (Repl. Vol.1997) explains that the estate which is conveyed or devised by deed may well be limited by an intention appearing in the conveyance:

> When any real property is conveyed or devised to any person, and no words of limitation are used in the conveyance or devise, such conveyance or devise shall be construed to pass the fee simple, or the whole estate or interest, legal or equitable, which the testator or grantor had power to dispose of, in such real property, unless a contrary intention shall appear in the conveyance or will.

*Id.* Our well-established case law likewise recognizes that when confronted with construing a deed, "the intention of the grantor controls" which requires that "the whole instrument, not merely and separately disjointed parts, is to be considered." Syl. Pt. 6, in part, *Uhl v. Ohio River R. Co.,* 51 W.Va. 106, 41 S.E. 340 (1902). We have also said that the polar star which should guide courts in the construction of deeds is the intention of the parties making the instrument. *Totten v. Pocahontas Coal & Coke Co.,* 67 W.Va. 639, 642, 68 S.E. 373, 374 (1910). The importance of giving deference to the intent of the parties when construing a deed was perhaps

best summarized in syllabus point one of *Maddy v. Maddy,* 87 W.Va. 581, 105 S.E. 803 (1921), when this Court said:

> In construing a deed, will or other written instrument, it is the duty of the court to construe it as a whole, taking and considering all the parts together, and giving effect to the intention of the parties wherever that is reasonably clear and free from doubt, unless to do so will violate some principal of law inconsistent therewith.

Accordingly, we have found that it is only in cases where the intent of the parties to a deed is unclear and no other rule of construction can resolve the ambiguity that doubt is resolved in favor of the grantee. Syl. Pt. 6, *White Flame Coal Co. v. Burgess,* 86 W.Va. 16, 102 S.E. 690 (1920).

With these principles in mind, we look to the language of Lucy Copen Belcher's initial deed conveying lot six to George Belcher and his wife, dated January 5, 1959, and recorded with the Kanawha County Clerk on December 8, 1960, in Deed Book 1324, Page 153, to determine whether, when that deed is read as a whole, the intent of the grantor as to the reservation is reasonably clear. The specific language of the lot six deed which indicates intent relevant to the reservation at issue is:

> [B]eing Lot Number Six (6) as shown on a map of the division of [a] 69 acre tract belonging to Lucy Copen Belcher, the party of the first part, and a copy of the map of the division of the said 69 acres is filed and recorded with the deed to Leeroy Belcher and Mary A. Belcher from Lucy Copen Belcher, to which map and deed reference may be had.
>
> It is understood by and between the parties hereto, that the roads as now established shall remain open for the use and benefit of the Belcher family; and the party of the first part also reserves from this conveyance the cemetery and the road leading to the cemetery, which cemetery is to be the burial place for the Belcher family.

It is clear from these two paragraphs, which are set out together in the deed, in the order appearing above, that Lucy Copen Belcher intended to convey lot six, as it appears

on the map included within the deed conveying lot five, exclusive of the land enclosed within the box labeled "cemetery" and subject to a right-of-way along the roadway depicted on the map within the deed for lot five.

It is likewise clear that any claim that Lucy Copen Belcher intended only to reserve the smaller area labeled "woven wire fence" on the map within the deed for lot five or the portion of land located there and labeled "existing cemetery" on the later plat, all situate entirely on lot six is clearly without merit. This conclusion is warranted because, inter alia: first, the right of way as shown on both maps leads only to (and from) the larger box labeled "cemetery" rather than the smaller "woven wire fence" area now referred to as "existing cemetery"; and secondly, were the 1959 lot six deed to be construed as only reserving the smaller cemetery situate completely within the bounds of lot six, the nearly identical reservation language appearing in the original 1959 deed for lot five would be rendered essentially meaningless. We refuse to entertain such absurd results on the basis of a technical interpretation of sentence structure of the deed involved, in face of the clear intent of the grantor, Lucy Copen Belcher.

■ While our holding in syllabus point two of *Bennett v. Smith*, 136 W.Va. 903, 69 S.E.2d 42 (1952), requires that an exception or reservation in a deed be certain and definite, our holding in syllabus point one of *Hoard v. Huntington & B.S.R. Co.*, 59 W.Va. 91, 53 S.E. 278 (1906) makes clear that the required certainty and definition is not derived solely from the face of the deed:

> [a] deed granting ... a ... right of way must contain on its face a description of the land in itself certain, so as to be identified, or, if not in itself so certain, it must give such description as, with the aid of evidence outside the deed, not contradicting it, will identify and locate the land ....

*Id.; see also Sally–Mike Properties v. Yokum*, 175 W.Va. 296, 301–02, 332 S.E.2d 597, 602 (1985) (rule applied to a reservation of land as a cemetery). We find that the language in the initial 1959 deed to lot six

adequately describes the reservations intended by specifically referencing the map which identifies the size and location of those reservations.

■ Nonetheless, appellees contend that the map referenced in the 1959 lot six deed was outside the chain of title to lot six and any purchaser of the property could not be held responsible for locating documents outside the title chain. There are situations where we would agree with the appellees. *See, e.g. Highway Properties v. Dollar Sav. Bank*, 189 W.Va. 301, 431 S.E.2d 95 (1993) (nothing contained in the language of a deed pointed to any means of defining the vague references to exceptions to the conveyance). However, as we previously discussed, we do not believe the instant case presents such a situation. This Court has held that "[a] party is not entitled to protection as a bona fide purchaser, without notice, unless he looks to every part of the title he is purchasing, neglecting no source of information respecting it which common prudence suggests." Syl. Pt. 2, *Pocahontas Tanning Co. v. St. Lawrence Boom & Mfg. Co.*, 63 W.Va. 685, 60 S.E. 890 (1908). We defined notice in *Pocahontas Tanning* as "[w]hatever is sufficient to direct the attention of a purchaser to prior rights and equities of third parties, so as to put him on inquiry into ascertaining their nature...." *Id.*, Syl. Pt. 1. The language in the initial 1959 deed to lot six adequately informs a reader of a reservation from the conveyance, the existence of a map describing lot six in relation to the other lots in the subdivision and the location of the map. We deem these facts to be sufficient to place a prudent person on notice and alert such person of the need to attempt to locate and examine the map as a source of information respecting the title to the property.

For the reasons here detailed, we conclude that the circuit court abused its discretion in determining that the 1995 conveyance to the Agees was not subject to the reservations of the larger cemetery and roadway as shown on the 1959 map, recorded with the deed of record, in Deed Book 1387, at Page 56–A, in the Office of the Clerk of the County Com-

mission of Kanawha County. We, therefore, reverse the decision of the lower court.

Accordingly, we hereby vacate the May 29, 2001, final order of the Circuit Court of Kanawha County, through which the determination of the size of the subject cemetery reservation was made, and remand the matter for proceedings consistent with this opinion.

Reversed and remanded.