719 S.E.2d 761

**Norma ACORD, a West Virginia Resident, Plaintiff Below, Petitioner**

v.

**COLANE COMPANY, a West Virginia Corporation, Individually and As Successor in Interest to Cole & Crane Real Estate Trust; Cole & Crane Real Estate Trust, a West Virginia Trust; Logan County Board of Education, a West Virginia Public Body; West Virginia Coal & Coke Company, a West Virginia Corporation; Omar Mining Company, a West Virginia Corporation, Individually and as Successor in Interest to West Virginia Coal & Coke Company; A.T. Massey Coal Company, a West Virginia Corporation, Individually and as Successor in Interest to West Virginia Coal &**

---

Coke Company; Massey Energy Company, a Virginia Corporation, Individually and as Successor in Interest to West Virginia Coal & Coke Company; and Richard Fry, a West Virginia Resident, Individually, Defendants Below, Respondents.

No. 101366.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 21, 2011.

Decided Nov. 16, 2011.

Daniel L. Stickler, Esq., Jonathan L. Anderson, Esq., Jackson Kelly PLLC, Charleston, WV, Attorneys for Respondents, Omar Mining Company, A.T. Massey Coal Company, and Massey Energy Company.

E.M. Kowal, Jr., Esq., Andrew P. Ballard, Esq., Campbell Woods, PLLC, Huntington, WV, for Respondents, Colane Company, and Cole & Crane Real Estate Trust.

PER CURIAM:

This case is before this Court upon appeal of final orders of the Circuit Court of Logan County entered on March 31, 2010, in this class action for medical monitoring based on negligence, strict liability and public nuisance claims. The petitioner and plaintiff below, Norma Acord, is the representative of a class of individuals consisting of current and former students and staff of Omar Elementary School. Ms. Acord contends that the class members are at an increased risk of contracting cancer because the property on which the school is located was used as a garbage dump from the 1920s through the 1950s.

In the final orders, the circuit court denied Ms. Acord's omnibus motion to alter or amend the circuit court's previous orders which granted summary judgment in favor of the respondents and defendants below, Colane Company, A.T. Massey Coal Company, Inc., Massey Energy Company, and Omar Mining Company. The court also denied Ms. Acord's motion to alter or amend its previous order dismissing respondent and defendant below, Coal & Crane Real Estate Trust.[1] The circuit court further denied Ms. Acord's motion for relief from judgment based on newly discovered evidence. In this appeal, Ms. Acord contends that that the circuit court erred in each of its rulings. She maintains that genuine issues of material fact existed which precluded summary judgment and that her newly discovered evidence should have been considered. This Court has before it the petition for appeal, the responses thereto, the designated record, and the arguments of counsel. For the rea-

Kevin W. Thompson, Esq., David R. Barney, Jr., Esq., Thompson Barney, Charleston, WV, for Petitioner, Norma Acord.

---

1. Richard Fry was also named as a defendant below, but he is not a party in this appeal. The Logan County Board of Education, another named defendant, reached a settlement with Ms. Acord in 2010 and was dismissed from the case.

sons set forth below, the final orders are affirmed.

## I.

## FACTS

Omar Elementary School opened in Chauncey, West Virginia, in 1964. The property on which the school is located was owned by West Virginia Coal and Coke Company (hereinafter "Coal & Coke") from the 1920s until 1954. Coal & Coke was engaged in the business of mining coal in the Island Creek Valley in Logan County and did so by leasing the mineral rights to properties owned by Cole & Crane Real Estate Trust (hereinafter "Cole & Crane").[2] During this time period, the property on which the school is now located was purportedly used as a public garbage dump for the company mining town and surrounding areas. In 1954, Coal & Coke sought to withdraw from the coal mining business and focus on its Ohio River barge operations. At that time, Coal & Coke sold the subject property to an individual named Tom Stark. Mr. Stark and his wife, Iola, then deeded the property to Colane Company (hereinafter "Colane").[3] The Logan County Board of Education (hereinafter "Logan County BOE") purchased the property from Colane in 1961.

In exiting the mining business, Coal & Coke sold its mining equipment and related assets to A.T. Massey Coal Company. A.T. Massey then assigned its rights under its agreement with Coal & Coke to its subsid-

iary, Omar Mining Company (hereinafter "Omar"). Omar entered into lease agreements with Cole & Crane and began mining the coal on its properties. As part of the agreement with Coal & Coke, A.T. Massey purchased the trade names and trademarks incident to Coal & Coke's mining operations.[4] As a result, Coal & Coke changed its name to Midland Enterprises, Inc.

In 2003, the United States Environmental Protection Agency (hereinafter "EPA") and the West Virginia Department of Health and Human Resources (hereinafter "DHHR") began conducting environmental testing at various sites in and around the town of Chauncey in response to citizen reports that chemical dumping had occurred in the past. These citizens believed that polychlorinated biyphenyls or PCBs were contaminating their community and that the chemicals were related to the number of Chauncey residents with cancer. The initial testing revealed that PCBs were not present in high enough amounts to be causing adverse health effects. The main exposure pathway that the DHHR identified during the first round of environmental testing was exposure to lead and arsenic from incidental ingestion of soil and sediment containing these chemicals.[5] The DHHR concluded, however, that the chemicals in the samples posed no apparent health hazard for the present or future. No historical data existed, and therefore, the site was classified as an indeterminate public health hazard for the past.

---

2. Cole & Crane is a liquidating real estate trust that was formed by J. Omar Cole and Clinton Crane in 1916; it continues in its operation today.

3. Coal & Coke sold all of its land interests in Logan County which included the company homes and the land on which they were located to Tom Stark who then deeded the property to Colane. Colane was formed on January 18, 1955, as a Delaware corporation and was registered to do business in West Virginia on that same day.

4. Thereafter, a second West Virginia Coal & Coke was incorporated. The corporate records indicated that "Coal & Coke II" was formed solely to protect the trade name "West Virginia Coal & Coke" which was purchased pursuant to

the agreement between Coal & Coke and A.T. Massey. Coal & Coke II never conducted any operations and was dissolved in May 1964.

5. During the environmental testing, the governmental agencies discovered certain amounts of organic and inorganic materials, some of which are naturally occurring in nature, within the samples taken from the site in question. In her complaint, Ms. Acord alleged that the following substances were present at the site: arsenic, n-nitroso-di-n-propylamine, pentachlorophenol, delta-Benzene hexachloride, 1,2–Dibromo–3–chloropropane, heptachlor, cadium, lead, manganese, arochlor–1260 (PCB), gamma-chlordane, dieldrin, endrin aldehyde, haptachlor epoxide, TCDD equivalents, thallium, benzo(a)pyrene (PAH), benzo(g,h,i)perylene (PAH), phenanthrene, dibenzo(a,h)anthracene (PAH), and mercury.

Because the 2003 sampling showed the presence of some contaminants, though not in high enough levels to cause adverse health effects, additional testing was nonetheless deemed prudent because of the concerns of community members relating to the dumping of pesticides in the area now used as baseball fields for children. Accordingly, additional testing was conducted from November 2003 to March 2004. Thereafter, a report was issued on March 9, 2005, by the United States Agency for Toxic Substances and Disease Registry (hereinafter "ATSDR") and the DHHR concluding that there was *"no apparent health hazard for the present* from the exposures likely to occur at this site to either children or adults" and that "the site poses *an indeterminate public health hazard in the past* because of lack of data for the past." (Emphasis in original). The reported also stated, "No public health recommendations are needed to keep people from being exposed to harmful amounts of chemicals found at this site."

This class action was initiated on May 10, 2004, by plaintiffs/class representatives Carlene Mowery, Edgar Franklin, and Connie Keith against defendants Colane and the Logan County BOE alleging that the real property where Omar Elementary School, its playground and baseball field are situated, is contaminated as a result of the residential and commercial waste discarded at the dump site prior to 1961. Thereafter, the complaint was amended[6] to add Cole & Crane as a defendant and modify the allegations against Colane to assert that it was a successor-in-interest to Cole & Crane. In the fourth amended complaint, it was alleged that Cole & Crane "as the mineral estate owner was a joint venturer with the various entities which conducted the coal mining operations, coal mine repair shop and power plant operations which ultimately led to the contamination" of the site, and further that Cole & Crane "owned and controlled Defendant Colane Corporation, as well as the real estate where the school now sits and the dump operated."

Omar, A.T. Massey and Massey Energy (hereinafter collectively referred to as "the Massey defendants") were also named as defendants, and the fourth amended complaint alleged as follows:

The Defendant, West Virginia Coal & Coke (Coal & Coke), directly polluted the school grounds and areas by operating an industrial waste dump and a coal-fired electric generating plant from the Great Depression until December 1954.

The Defendant, A.T. Massey Coal Company (A.T. Massey), assumed the responsibility for Coal & Coke's pollution when it took over Coal & Coke's corporate structure and Island Creek operations in 1954.

The Defendant, Omar Mining Company, is a wholly owned and controlled subsidiary of A.T. Massey and was a direct polluter from 1954 until the construction of the school.

The Defendant, Massey Energy Company is a publicly-traded company which controls and manages and/or is a successor-in-interest to the Defendants, A.T. Massey, Omar Mining and Coal & Coke.

The complaint alleged that the class members were exposed to toxic, dangerous and deadly chemicals when they attended school and played at the school's baseball field and playground, which increased their risk of contracting serious, latent diseases. The complaint also alleged counts of general negligence, strict liability, and public nuisance against the defendants for dumping and/or allowing the dumping of hazardous materials upon the real property in question prior to 1961.

Following discovery, Colane and the Massey defendants filed motions for summary judgment while Cole & Crane filed a motion to dismiss. The circuit court granted the motions in multiple orders that were entered on July 15, 2009. Thereafter, Ms. Acord filed an Omnibus Motion to Alter or Amend pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure[7] and a Motion for

---

6. The complaint has been amended four times. The last amended complaint replaced the initial class representatives with current class representative Norma Acord.

7. Rule 59(e) of the West Virginia Rules of Civil Procedure states:

 *Motion to alter or amend a judgment.*—Any motion to alter or amend the judgment shall be

Relief from Judgment Based on Newly Discovered Evidence pursuant to Rule 60(b) of the West Virginia Rules Civil Procedure.[8] Along with these motions, Ms. Acord submitted more than four hundred pages of exhibits. In response, the Massey defendants, joined by defendants Colane and Cole & Crane, filed a motion seeking to strike some of the exhibits submitted by Ms. Acord, contending that they were not made part of the record prior to summary judgment, and as a result could not be considered with respect to the Motion to Alter or Amend Judgment. Upon review, the court granted the defendants' motion to strike, in part, finding that several of the exhibits could have been submitted at the summary judgment stage of the proceedings. With respect to the Motion to Alter or Amend, the court found that Ms. Acord had proffered no evidence or authorities to cause the court to alter or otherwise amend its orders granting summary judgment to Colane and the Massey defendants or its order dismissing Cole & Crane.

With regard to the Rule 60(b) motion, the circuit court found that Ms. Acord was unable to satisfy her burden of showing that her allegedly newly discovered evidence could not have been discovered with the exercise of due diligence prior to judgment. The court further found that even if the newly discovered evidence would have been considered, it would not have produced a different outcome. Accordingly, the circuit court denied Ms. Acord's Rule 60(b) motion. The circuit court's orders denying Ms. Acord's Rule 59(e) and 60(b) motions were entered on March 31, 2010. This appeal followed.

## II.

## STANDARD OF REVIEW

■ This Court recently explained in Syllabus Point 2 of *Mey v. The Pep Boys—* *Manny, Moe & Jack,* 228 W.Va. 48, 717 S.E.2d 235 (2011):

A motion under Rule 59(e) of the *West Virginia Rules of Civil Procedure* should be granted where: (1) there is an intervening change in controlling law; (2) new evidence not previously available comes to light; (3) it becomes necessary to remedy a clear error of law or (4) to prevent obvious injustice.

" ' "The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed." Syllabus point 1, *Wickland v. American Travellers Life Insurance Co.,* 204 W.Va. 430, 513 S.E.2d 657 (1998).' Syllabus point 2, *Bowers v. Wurzburg,* 205 W.Va. 450, 519 S.E.2d 148 (1999)." Syllabus Point 1, *Alden v. Harpers Ferry Police Civil Service Comm'n,* 209 W.Va. 83, 543 S.E.2d 364 (2001). In this case, Ms. Acord filed her Rule 59(e) motion following the circuit court's grant of summary judgment to Colane and the Massey defendants and the grant of dismissal to Cole & Crane. This Court applies a *de novo* standard of review to a circuit court's entry of summary judgment. Syllabus Point 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). Likewise, "[t]he Court reviews a circuit court's order granting a motion to dismiss a complaint under a de novo standard." *Ruckdeschel v. Falcon Drilling Co., L.L.C.,* 225 W.Va. 450, 454, 693 S.E.2d 815, 819 (2010). In contrast, " '[a] motion to vacate a judgment made pursuant to *Rule* 60(b), W.Va. R.C.P., is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion.' Syl. pt. 5, *Toler v. Shelton,* 157 W.Va. 778, 204 S.E.2d 85 (1974)." Syllabus Point 1, *Jackson General Hospital v. Davis,* 195

---

filed not later than 10 days after entry of the judgment.

8. Rule 60(b) of the West Virginia Rules of Civil Procedure provides, in pertinent part:
 On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons ... (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)[.]

W.Va. 74, 464 S.E.2d 593 (1995). With these standards in mind, the assignments of error will be considered.

## III.

## DISCUSSION

As discussed above, Ms. Acord argues in this appeal that the circuit court erred by granting summary judgment to Colane and the Massey defendants and by granting Cole & Crane's motion to dismiss. She also contends the circuit court erred by denying her motion for relief from judgment based on newly discovered evidence. Each argument will be considered separately below.

### A. Summary Judgment In Favor of Colane

Ms. Acord first contends the circuit court erred by granting summary judgment to Colane. Ms. Acord argues that she demonstrated that genuine issues of material fact existed by presenting photographic evidence showing a Colane garbage truck on the subject property as well as the testimony of four fact witnesses regarding the operation of the dump from 1933 through 1955. Ms. Acord states that the testimony of these fact witnesses links the wastes deposited at the dump to the harmful contaminants found at the site today. Furthermore, Ms. Acord asserts that the testimony of her expert witnesses, particularly that of Dr. Scott Simonton, provides a descriptive picture of the general practices of the parties involved and that the wastes which Dr. Simonton has indicated were discarded at the dump site match the contaminants found on the subject property today. Ms. Acord maintains that the circuit court erred by dismissing this unchallenged testimony as "rank speculation" and concluding that she was unable to satisfy her burden of proof.

■ In her fourth amended complaint, Ms. Acord asserted that Colane "intentionally knowingly and with gross negligence permitted, conducted, allowed and authorized the disposal of oil waste, pesticides, chemicals, toxins, PCBs, dioxins, transformers, batteries and other dangerous and deadly toxic waste in, on and around the Omar school and playgrounds[.]" Ms. Acord also asserted negligence on the part of Colane for ultimately selling the property to the Logan County BOE "knowing it was to be used as a school." This Court has held that "[i]n order to prove actionable negligence there must be shown a duty on the part of the person charged with negligence and a breach of such duty." Syllabus Point 2, *Atkinson v. Harman*, 151 W.Va. 1025, 158 S.E.2d 169 (1967). Therefore, in order to succeed upon her claim of negligence against Colane, Ms. Acord needed to establish that Colane had a duty to refrain from dumping hazardous materials on the subject property and breached that duty by dumping such materials resulting in the presence of the contaminants found on the property today. A review of the record shows, however, that Ms. Acord was unable to produce such evidence.

■ Ms. Acord identified four fact witnesses during the discovery phase and each gave deposition testimony, but none of them were able to identify a specific contaminant that was discarded on the property during Colane's period of ownership. In fact, they were unable to identify any chemical and/or contaminant ever discarded upon the subject property at any time in the past. The only witness able to identify any product that was sent to the dump was Carew Ferrell. He testified that he worked at the Junior Mercantile store and that on occasion, damaged and unsellable merchandise including the pesticides "Sevin Dust" and "Blue Dragon" were placed in the garbage. The evidence in the record indicates, however, that the ingredients found in these pesticides were not among the contaminants identified in the testing of the school grounds by the government agencies or by Ms. Acord's expert. Without evidence establishing the dumping of materials containing the contaminants now found at the site, Ms. Acord's claim fails as a matter of law. In other words, Ms. Acord cannot satisfy the breach of duty element of her negligence claim because she was unable to produce evidence of specific contaminants disposed at the site by Colane or any other party. This Court has held that "[s]ummary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the

nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syllabus Point 2, *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995). Thus, the circuit court did not err in granting summary judgment to Colane on the negligence claim.

■ The circuit court's grant of summary judgment to Colane on the strict liability and public nuisance claims was also proper. These claims failed for the same reason as Ms. Acord's negligence action. In the complaint, Ms. Acord asserted that Colane was "strictly liable for all personal injuries caused by exposure to toxic substances emanating from its property in Chauncey." She further alleged that Colane "created a public nuisance from which the Plaintiffs have derived special damages and demand abatement." Again, without testimony or other evidence showing that the contaminants presently found at the site resulted from the dumping of materials containing these contaminants, Ms. Acord's claims cannot go forward. There is no basis to establish tortious conduct on the part of Colane absent evidence that toxic contaminants were disposed on the subject property either before, or during Colane's ownership of the property. Accordingly, there is no genuine issue of material fact in existence upon which a reasonable jury could render a verdict in her favor. Therefore, summary judgment in favor of Colane was proper.

■ Likewise, the circuit court did not err in granting summary judgment to Colane on the medical monitoring claim. In *Bower v. Westinghouse Electric Corp.*, 206 W.Va. 133, 522 S.E.2d 424 (1999), the seminal case on medical monitoring in West Virginia, this Court set forth the elements of such a cause of action. In that regard, Syllabus Point 3 of *Bower* holds:

> In order to sustain a claim for medical monitoring expenses under West Virginia law, the plaintiff must prove that (1) he or she has, relative to the general population, been significantly exposed; (2) to a proven

hazardous substance; (3) through the tortious conduct of the defendant; (4) as a proximate result of the exposure, plaintiff has suffered an increased risk of contracting a serious latent disease; (5) the increased risk of disease makes it reasonably necessary for the plaintiff to undergo periodic diagnostic medical examinations different from what would be prescribed in the absence of the exposure; and (6) monitoring procedures exist that make the early detection of a disease possible.

Having found that Ms. Acord failed to present sufficient evidence to prove her tort theories of liability asserted against Colane, she cannot satisfy the third element necessary to sustain a claim for medical monitoring. In *Bower*, this Court explained:

> Liability for medical monitoring is predicated upon the defendant being legally responsible for exposing the plaintiff to a particular hazardous substance. Legal responsibility is established through application of existing theories of tort liability. "Recognition that a defendant's conduct has created the need for future medical monitoring does not create a new tort. It is simply a compensable item of damage when liability is established under traditional theories of recovery." *Potter [v. Firestone Tire and Rubber Co.]*, 6 Cal.4th [965] at 1007, 25 Cal.Rptr.2d [550] at 578, 863 P.2d [795] at 823 [ (1993) ]; *see also Hansen [v. Mountain Fuel Supply]*, 858 P.2d [970] at 979 [ (Utah 1993) ] ("the plaintiff must prove that the exposure to the toxic substance was caused by the defendant's negligence, i.e., by the breach of a duty owed to the plaintiff"). This is not to say that a plaintiff may not, as a matter of pleading, assert a separate cause of action based upon medical monitoring; rather, it means that underlying liability must be established based upon a recognized tort—*e.g.*, negligence, strict liability, trespass, intentional conduct, etc.

206 W.Va. at 142, 522 S.E.2d at 433. Accordingly, the circuit court did not err in granting summary judgment to Colane on the medical monitoring claim.[9]

---

9. Although it is not necessary for us to consider the other elements necessary to sustain a medical

monitoring claim given that Ms. Acord could not satisfy the tortious conduct requirement, it is

## B. Summary Judgment in Favor of the Massey Defendants

**1. Omar.** Ms. Acord also contends that the circuit court erred by granting summary judgment to Omar. In her fourth amended complaint, Ms. Acord asserted that Omar "was a direct polluter from 1954 until the construction of the school." However, as with respondent Colane, there is no factual basis to hold Omar liable. As discussed above, in order to substantiate her claims of negligence, strict liability, public nuisance, and medical monitoring, Ms. Acord needed to produce evidence establishing the dumping of specific contaminants that are found on the property today. Because Ms. Acord was unable to do so, she could not satisfy her burden. Accordingly, the circuit court did not err in granting summary judgment in favor of Omar.

**2. A.T. Massey and Massey Energy.** Next, Ms. Acord asserts that the circuit court erred by granting summary judgment to A.T. Massey and Massey Energy. In her fourth amended complaint, Ms. Accord alleged that A.T. Massey and Massey Energy were liable as successors-in-interest to Coal & Coke. In that regard, she stated that A.T. Massey "assumed responsibility for Coal & Coke's pollution when it took over Coal & Coke's corporate structure and Island Creek operations in 1954." Ms. Acord also alleged that A.T. Massey and Massey Energy, as the parent companies of Omar, were liable for any of Omar's acts or omissions. The circuit court found that Ms. Acord failed to present sufficient evidence to substantiate her claims. She now argues that the circuit court erred in this ruling and that these issues should have been presented to the jury.

▆▆ With regard to the successor liability claim, the circuit court found that not only

had Ms. Acord failed to present evidence to support her allegation but that A.T. Massey had presented affirmative evidence showing that it was a mere purchaser of certain assets of Coal & Coke and that it did not assume its liabilities. Upon review, the record shows that Ms. Acord did not challenge the circuit court's ruling on this issue in her Rule 59(e) motion. Consequently, that issue cannot be considered in this appeal.[10] As this Court explained in *Wickland, supra,* "The practical effect of [a Rule 59(e) motion] is to enlarge the time within which an appeal must be filed as to those matters which are the subject of the motion." 204 W.Va. at 434, 513 S.E.2d at 661. Therefore, "only those errors raised in the motion to alter or amend judgment benefit from an extended appeal period; those issues not assigned as grounds supporting an alteration or amendment of the judgment retain the original filing period applicable to appeals in general." *Id.,* 204 W.Va. at 435, 513 S.E.2d at 662. *See also Thompson v. Branches–Domestic Violence Shelter of Huntington, W. Va., Inc.,* 207 W.Va. 479, 483, 534 S.E.2d 33, 37 (2000) (reiterating that only errors raised in a Rule 59(e) motion benefit from the extended appeal period).

Ms. Acord did assign as error in her Rule 59(e) motion the circuit court's ruling that there was insufficient evidence to hold A.T. Massey or Massey Energy liable for any acts or omissions of Omar Mining. However, in light of our finding that the circuit court did not err in granting summary judgment to Omar, this issue is now moot.

## C. Dismissal of Cole & Crane

Next, Ms. Acord contends that the circuit court erred by granting Cole & Crane's motion to dismiss.[11] She maintains that the

---

noted that the exposure element presented another roadblock in her prosecution of this claim in light of the 2005 DHHR report concluding that there was no present health hazard and that no public health recommendations were needed to keep people from being exposed to harmful amounts of chemicals found at the site.

**10.** While we find that the assigned error was not preserved for appeal, we note that without evidence establishing that specific contaminants were dumped on the property in the past, Ms.

Acord cannot prove liability on the part of any prior owner and therefore, her successor liability claim is moot.

**11.** The circuit court's order indicates that Cole & Crane's motion to dismiss was converted to a motion for summary judgment as matters outside the pleadings were considered. As this court has explained, " 'Only matters contained in the pleading can be considered on a motion to dismiss under Rule 12(b) R.C.P., and if matters outside the pleading are presented to the court

evidence in the record creates genuine issues of material fact regarding Cole & Crane's ownership of the subject property and its status as a joint venturer with the various entities that she asserts are responsible for the contamination. In the fourth amended complaint, Ms. Acord alleged:

> The Defendant, Cole and Crane Real Estate Trust, a West Virginia trust, previously owned the property comprising Omar Elementary, Chauncey and other properties in the Island Creek watershed. The Defendant, Cole and Crane Real Estate Trust, as mineral estate owner, was a joint venturer with the various entities which conducted the coal mining operations, coal mine repair shops and power plants operations which ultimately led to the contamination complained of herein. The Defendant, Cole and Crane Real Estate Trust owned and controlled Defendant Colane Corporation, as well as the real estate where the school now sits and the dump operated.

The circuit court found that Ms. Acord had failed to produce any evidence to substantiate her allegation that Cole & Crane previously owned the property where Omar Elementary is now located. To the contrary, the affidavit of Phillip G. Montague, president of Colane, established that Cole & Crane never owned and controlled Colane [12] and more importantly, never owned the subject property. Furthermore, there was no indication in the deeds to the property that Cole & Crane was a prior owner. Ms. Acord argued below and now argues in the appeal that there is a genuine issue of material fact with regard to the ownership of the property because the name Cole & Crane appears on a plat map of the property. In support of her argument,

Ms. Acord relies upon this Court's decision in *Belcher v. Powers,* 212 W.Va. 418, 573 S.E.2d 12 (2002).

*Belcher* involved a dispute regarding the size and location of a parcel of property that had been reserved for use as a family cemetery when a large tract of land was subdivided into seven lots. The deed to one of the lots had a map attached depicting the cemetery which was then referenced in the deeds to the other lots. The parties in *Belcher* owned the adjoining lots where the cemetery was located. The dispute over the size and location of the cemetery arose when one of the lot owners attempted to subdivide his lot. This Court found that the language in the deeds referencing the cemetery was ambiguous and that it was therefore necessary to locate and examine the map to determine the boundaries of the cemetery. *Id.,* 212 W.Va. at 425, 573 S.E.2d at 19.

In this case, Ms. Acord argues that *Belcher* requires deeds and plat maps to be read together and that the presence of Cole & Crane's name on the plat map creates a genuine issue of material fact regarding prior ownership of the subject property. Ms. Acord's reliance upon *Belcher,* however, is misplaced. In this case, the language in the deeds to the subject property is not ambiguous. There is absolutely no indication in the deeds that Cole & Crane was ever a record owner of the property in question. Accordingly, evidence outside the four corners of the deeds is not relevant,[13] and therefore, the plat map is of no consequence.[14]

As set forth above, Ms. Acord also asserted that Cole & Crane was liable as a joint venturer with the coal companies who mined

---

and are not excluded by it, the motion should be treated as one for summary judgment and disposed of under Rule 56 R.C.P. if there is no genuine issue as to any material fact in connection therewith....' Syl. Pt. 4, in part, *U.S. Fid. and Guar. Co. v. Eades,* 150 W.Va. 238, 144 S.E.2d 703 (1965)." Syllabus Point 3, *Riffle v. C.J. Hughes Const. Co.,* 226 W.Va. 581, 703 S.E.2d 552 (2010).

12. The undisputed evidence in the record shows that Colane is a closely-held private corporation with its own board of directors and shareholders and that its primary function today is the operation of its subsidiary, Colane Cable TV, Inc.

There is no evidence that Cole & Crane has ever owned any shares of Colane.

13. *See Pocahontas Land Corp. v. Evans,* 175 W.Va. 304, 308, 332 S.E.2d 604, 609 (1985) (explaining that where the intent of the parties is clearly expressed in definite and unambiguous language on the face of the deed itself, parole or extrinsic evidence will not be considered).

14. The evidence in the record indicates the placement of Cole & Crane's name upon the plat map was simply an error.

its properties and were responsible for the alleged contamination. In other words, Ms. Acord maintained that Cole & Crane was closely involved with the mining of the coal on its properties and therefore, was responsible for the contamination resulting therefrom. Assuming without deciding that a mineral owner acting as a lessor is responsible for acts of pollution caused by coal companies mining its leases, the fact remains that Ms. Acord presented no evidence to support her contentions. In her response to Cole & Crane's Motion to Dismiss, Ms. Acord acknowledged that Cole & Crane "never opened a portal, negotiated with a union or shipped a single ton of coal." Ms. Acord failed to produce even a mere scintilla of evidence that Cole & Crane asserted control over its lessees who were mining coal on its properties near the Omar School.[15] As such, the circuit court did not err in granting Coal & Crane's motion to dismiss.

### D. Denial of Rule 60(b) Motion

 Finally, Ms. Acord contends that the circuit court erred by denying her Rule 60(b) motion. Ms. Acord filed the motion asserting that she had newly discovered evidence in the form of an additional fact witness, Harvey Adkins, and a congressional subcommittee staff report concerning the ATSDR. The circuit court found that Ms. Accord had not carried her burden of showing that Mr. Adkins could not have been discovered by the exercise of due diligence prior to judgment. The court concluded that while Ms. Acord and her counsel claimed they were seeking additional witnesses throughout the litigation, the record was simply devoid of any indication that they were making such attempts prior to entry of judgment. Likewise, the court found that Ms. Acord had not carried her burden of showing that the congressional subcommittee report dated March 10, 2009, more than four months prior to the granting of judgment, could not have been discovered by the exercise of due diligence prior to judgment. The

circuit court further found that even if the newly discovered evidence would have been considered, it would not have produced a different outcome.

Mr. Adkins testified that he had worked in the general mine repair shop for West Virginia Coal & Coke and had continued his employment when Omar took over the mining operation. Mr. Adkins testified that during the four-to-five-year time period that he worked in the mine repair shop, he made two or three trips to the dump to empty the residue from a used calcium carbide tank. He could not recall, however, observing oil, fluids or anything else being taken from the repair shop to the local dump. Mr. Adkins could not recall exactly when he made the two or three trips to the dump, and he could not say whether the trips occurred while he worked for Coal & Coke or Omar. The circuit court determined that this testimony would not have created a different result from its prior grant of summary judgment. The circuit court also noted that Ms. Acord had never asserted that calcium carbide remnants were harmful or that calcium carbide remnants were even found to exist in its sampling of the soil from the site.

The circuit court further found that the congressional subcommittee report concerning the ATSDR would not have created a different result from the Court's prior granting of summary judgment as neither the report nor any of the materials attached thereto concerned the ATSDR's evaluation of the Omar School site. The report criticized the practices of the ATSDR in unrelated site assessments.

In this appeal, Ms. Acord maintains that the circuit court should have considered this newly discovered evidence. She says that despite diligent efforts on the part of her counsel, Mr. Adkins's identity remained unknown until recently. She maintains that if this evidence is not considered, there will be a grave miscarriage of justice as Mr. Ad-

---

15. In her brief submitted to this Court, Ms. Acord cites to and quotes deposition testimony of various witnesses which she claims supports her contention that Cole & Crane was in fact closely involved with the mining of coal on its properties. This evidence was submitted below along

with her Rule 59(e) and Rule 60(b) motions. As noted above, the circuit court granted the respondents' motion to strike this evidence. Ms. Acord has not appealed that decision, and therefore, the evidence cannot be considered in this appeal.

304

kins's testimony proves that Omar was a contributor of oil and other wastes to the subject property.

 A party seeking to have a judgment set aside based on newly discovered evidence has a significant burden. In fact, "[r]arely is relief granted under this rule because it provides a remedy that is extraordinary and is only invoked upon a showing of exceptional circumstances. Because of the judiciary's adherence to the finality doctrine, relief under this provision is not to be liberally granted." *Powderidge Unit Owners Ass'n v. Highland Properties, Ltd.,* 196 W.Va. 692, 704 n. 21, 474 S.E.2d 872, 884 n. 21 (1996) (internal quotations and citation omitted). The Syllabus of *State v. Frazier,* 162 W.Va. 935, 253 S.E.2d 534 (1979), states:

"A new trial will not be granted on the ground of newly-discovered evidence unless the case comes within the following rules: (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained. (2) It must appear from facts stated in his affidavit that plaintiff was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. (3) Such evidence must be new and material, and not merely cumulative; and cumulative evidence is additional evidence of the same kind to the same point. (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits. (5) And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side." Syllabus Point 1, *Halstead v. Horton,* 38 W.Va. 727, 18 S.E. 953 (1894).

Having carefully reviewed the record in this case, we are unable to find that the circuit court abused its discretion by denying Ms. Acord's Rule 60(b) motion. Ms. Acord failed to demonstrate that she acted diligently and could not have secured the new evidence prior to the circuit court's ruling on the dispositive motions. Moreover, it is also clear that had this evidence been available prior to the circuit court's ruling, it would not have provided a basis for the court to reach a different result. Accordingly, we find no reversible error.

## IV.

## CONCLUSION

For the reasons set forth above, the final orders of the Circuit Court of Logan County entered on March 31, 2010, are affirmed.

Affirmed.

Justice BENJAMIN, deeming himself disqualified, did not participate in the decision in this case.

Judge HUMMEL, sitting by temporary assignment.